UNIFIED SCHOOL DISTRICT NO. 1 OF RACINE COUNTY, Petitioner-Appellant, v. WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent.

*No. 75–559. Argued November 2, 1977.—*
*Decided November 30, 1977.*
(Also reported in 259 N.W.2d 724.)

For the appellant there was a brief and oral argument by *W. Thatcher Peterson,* coordinator of employee services, of Racine.

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, *Charles D. Hoornstra,* assistant attorney general, and oral argument by *John Niemisto,* assistant attorney general.

CONNOR T. HANSEN, J. The material facts are not in dispute. The petitioner-appellant is a Wisconsin public school district and has for some time had a collective bargaining relationship with a union representing, among other groups, the district's food service personnel.

On July 11, 1973, the district began negotiating with the union for a labor contract for the 1973–74 school year. Among the union's proposals was a job security provision which would have prevented the district from contracting out the work performed by employees in the bargaining unit.[1]

The district's hot lunch program was to be substantially expanded during the 1973–74 school year, and the expansion was expected to create approximately forty food service jobs.

On July 18, 1973, the finance committee of the district's school board recommended that the board accept a proposal by a private corporation, ARA Services, Inc. (ARA), to take over the food service program. The finance committee also recommended that food service employees of the district be guaranteed re-employment by ARA without loss of seniority rights and without a wage cut.

Representatives of the union and the district met and discussed the finance committee's recommendations. The union claimed that the decision to contract out its members' work was a mandatory subject of collective bargaining under the Municipal Employment Relations Act, sec. 111.70, *et seq.,* Stats. Although the district expressed

[1] The provision proposed that:

"No work presently preformed [sic] by bargaining unit employees shall be performed by nonunit employees, whether of this employer or of another employer."

willingness to bargain with regard to the effect of such a decision on the employees, it maintained that the decision to contract with ARA was not itself a proper subject for collective bargaining.

On August 13, 1973, the school board voted to adopt the finance committee's recommendation. On August 16th, the school board entered into an agreement with ARA. Under the agreement, the district food service program remained substantially the same except that ARA assumed full responsibility for its operation, including employing and supervising personnel, collecting money from the students, preparing menus, purchasing food and cleaning supplies and assisting with the purchase of equipment for the expansion of the hot lunch program.

The union filed a complaint with the Wisconsin Employment Relations Commission (Commission), alleging that the district's refusal to bargain violated the Municipal Employment Relations Act, sec. 111.70, *et seq.*, Stats. After a hearing, the Commission determined that the refusal to bargain constituted an unfair labor practice under the statute. By its order dated October 17, 1974, the Commission ordered the district to resume operation of the food service program, reinstate its former employees, make them whole for any losses, post a notice of compliance, and, on request, bargain with the union regarding both the decision to subcontract and its effects.

The district petitioned for judicial review, and the Commission then petitioned for enforcement of its order. The trial court affirmed the order of the Commission and granted the petition for enforcement. The district appeals.

We believe this case presents two issues which may be identified as follows:

1. Was the school board's decision to subcontract its food service program a mandatory subject of collective bargaining under sec. 111.70 (1) (d), Stats.?

2. Does the Municipal Employment Relations Act violate the "one man, one vote" principle of the fourteenth amendment?

## MANDATORY BARGAINING.

This appeal, like *Beloit Education Asso. v. WERC,* 73 Wis.2d 43, 242 N.W.2d 231 (1976), raises questions concerning the subjects of mandatory collective bargaining under the Municipal Employments Relations Act, and in particular sec. 111.70 (1) (d) of the Act. The decision of the Commission in this case and the *Beloit Case* were nearly contemporaneous.[2] Therefore, we conclude this case is subject to the same standard of review as *Beloit.*

In *Beloit Education Asso., supra,* this court discussed the standard of review applicable to a decision of the Commission concerning the areas of mandatory bargaining under sec. 111.70 (1) (d), Stats. Because the case raised "very nearly questions of first impression," this court held that it was " 'not bound' " by the Commission's interpretation of the statute, although the Commission's decision would have " 'great bearing' " on the court's decision, and would be accorded " 'due weight.' " *Beloit Education Asso., supra,* at 68. As in the *Beloit Case,* because of the limited experience of the Commission with the questions presented, and their strictly legal nature, it is appropriate for this court to reach an independent determination of the intent and meaning of the statute, giving due weight to the decision of the Commission.

We begin by setting forth the definitions of "collective bargaining" as determined by the legislature and set forth in the statutes and as related to private employment relations and municipal employment relations.

---

[2] The Commission's order in the case before the court was dated October 17, 1974. On the same date the Commission modified the ruling it had issued in the *Beloit Case* on September 11, 1974.

In private employment relations, "collective bargaining" is defined as:

". . . the negotiating by an employer and a majority of his employes in a collective bargaining unit (or their representatives) *concerning representation or terms and conditions of employment* of such employes in a mutually genuine effort to reach an agreement with reference to the subject under negotiation." (Emphasis supplied.) Sec. 111.02(5), Stats.

In municipal employment relations collective bargaining is defined by sec. 111.70(1)(d), Stats., as:

". . . the performance of the mutual obligation of a municipal employer, through its officers and agents, and the representatives of its employes, to meet and confer at reasonable times, in good faith, with respect to wages, hours and conditions of employment with the intention of reaching an agreement, or to resolve questions arising under such an agreement. The duty to bargain, however, does not compel either party to agree to a proposal or require the making of a concession. Collective bargaining includes the reduction of any agreement reached to a written and signed document. The employer shall not be required to bargain on subjects reserved to management and direction of the governmental unit except insofar as the manner of exercise of such functions affects the wages, hours and conditions of employment of the employes. *In creating this subchapter the legislature recognizes that the public employer must exercise its powers and responsibilities to act for the government and good order of the municipality, its commercial benefit and the health, safety and welfare of the public to assure orderly operations and functions within its jurisdiction, subject to those rights secured to public employes by the constitutions of this state and of the United States and by this subchapter.*" (Emphasis supplied.)

A reading of the two definitions leads to the conclusion that the legislature intended, and in fact declared, that the rights and responsibilities of all parties in the area of collective bargaining in private employment re-

lations were to be distinguished from those in the area of municipal employment relations.

In *Beloit Education Asso. v. WERC, supra,* this court considered whether various areas of concern to a teachers' association were mandatory subjects of collective bargaining with a school board. The court recognized that the Municipal Employment Relations Act requires an accommodation between, on one hand, the bargaining rights of the employees and, on the other, the rights of the public through its elected representatives, to control the functions of government.

Sec. 111.70(1)(d), Stats., recognizes these conflicting concerns. It requires municipal employers to bargain "with respect to wages, hours and conditions of employment. . . ." At the same time, it provides that bargaining is not required "on subjects reserved to management and direction of the governmental unit except insofar as the manner of exercise of such functions affects the wages, hours and conditions of employment. . ." In addition, the statute recognizes the public employer's duty to act for the government, good order and commercial benefit of the municipality and for the health, safety and welfare of the public, subject to the constitutional and statutory rights of the public employees.

In the *Beloit Case,* this court addressed the conflict inherent in these propositions. The result in that case reflects the fact that governmental decisions fall along a spectrum from matters plainly bargainable (*e.g.,* teachers' salary levels) to matters reserved to the exclusive discretion of the governmental unit (*e.g.,* construction of new schools), and that, while it is necessary to do so, "drawing the line or making the distinction is not easy." *Beloit, supra,* at 53.

Collective bargaining is required, the court held, with regard to matters "primarily" related, or "fundamentally," "basically" or "essentially" related to wages, hours or

conditions of employment. Bargaining is not required, however, with regard to "educational policy and school management and operation" or the " 'management and direction' of the school system." *Beloit, supra,* at 52, 67. This "primary relationship" test must be applied on a case by case basis, the court held.

The present appeal, like *Beloit, supra,* presents a question as to the area of decision-making reserved to the discretion of the governmental unit. In answering this question, both parties urge constructions of sec. 111.70 (1) (d), Stats., which would distort the holding in the *Beloit Case.*

The Commission argues that the present appeal is governed by *Libby, McNeill & Libby v. Wisconsin E. R. Comm.,* 48 Wis.2d 272, 179 N.W.2d 805 (1970). *Libby* concerns private employment relations. There this court held that an employer's decision to mechanize cucumber harvesting operations was not a mandatory subject of collective bargaining. Drawing from federal decisions in analogous situations, the court concluded that:

". . . most management decisions which change the direction of the corporate enterprise, involving a change in capital investment, are not bargainable." *Libby, supra,* at 283.

"The test," the court said, ". . . is whether the decision was one which changed the basic direction of the company's activities." *Libby, supra,* at 284.

The Commission would apply this standard to the public sector. This court's holding in *Libby,* the Commission points out, was founded on the decision of the Supreme Court in *Fibreboard Corp. v. Labor Board,* 379 U. S. 203, 85 Sup. Ct. 398, 13 L. Ed.2d 233 (1964). There, the Supreme Court held that the contracting out, by a private employer, of work previously done by union members, was a mandatory subject of bargaining under the National Labor Relations Act.

The Commission argues that this holding, approved in *Libby,* governs the present case. The district's decision to subcontract its food service operation must be bargained, the Commission says, because it did not "change the basic direction" of the district's activities, or affect its "essential enterprise" but ". . . merely substitutes outsiders doing the same work in the same manner. . . ," *Libby, supra,* at 284.

However, fundamental differences between private and public employment make the *Libby* "change of direction" or "essential enterprise" test inappropriate under sec. 111.70 (1) (d), Stats. The relevant statutory language reflects these differences. In the private sector, sec. 111.02 (5) requires "collective bargaining," with regard to "wages, hours and conditions of employment." Sec. 111.70 (1) (d) of the Municipal Employment Relations Act, on the other hand, contains a similar provision but also contains a "management rights" clause providing that:

". . . The employer shall not be required to bargain on subjects reserved to management and direction of the governmental unit except insofar as the manner of exercise of such functions affects the wages, hours and conditions of employment of the employes. . . ."

The statute further provides:

". . . that the public employer must exercise its powers and responsibilities to act for the government and good order of the municipality, its commercial benefit and the health, safety and welfare of the public to assure orderly operations and functions within its jurisdiction, subject to those rights secured to public employes by the constitutions of this state and of the United States and by this subchapter."

The Commission argues that this statutory language does not enlarge the area reserved to the employer's discretion. Rather, the Commission says this provision

simply makes explicit the management rights recognized in *Libby* as implicitly reserved to private employers under sec. 111.02(5), Stats.

Management rights clauses, however, are a recognized and widely used means of distinguishing the scope of collective bargaining in the public sector from that of bargaining in the private sector.[3] The construction proposed by the Commission would render the statutory language mere surplusage, and the law favors a construction which gives meaning to every portion of a statute. *Johnson v. State*, 76 Wis.2d 672, 676, 251 N.W.2d 834 (1977). It is less than persuasive, therefore, to argue that the statutory reference to "subjects reserved to management and direction of the governmental unit" was intended to have no substantive effect.

There are important economic and policy reasons why the legislature would distinguish between collective bargaining in the public sector and the private sector:

" '. . . In the private sector, union demands are usually checked by the forces of competition and other market pressures. Negotiators are typically limited by such restraints as the entry of non union competitors, the impact of foreign goods, the substitution of capital for higher-priced labor, the shift of operations to lower-cost areas, the contracting out of high-cost operations to other enterprises, the shutdown of unprofitable plants and operations, the redesign of products to meet higher costs, and finally the managerial option to go out of business entirely. Similar limitations are either nonexistent or very much weaker in the public sector. While budgets and corresponding tax levies operate in a general way to check increases in compensation, the connection is remote and scarcely applicable to particular units of groups of strategically located public employees. . . .' Cox and Bok, *Labor Law* (7th ed.), pages 970, 971." *quoted* in *Hortonville Ed. Asso. v. Joint Sch. Dist. No. 1*, 66 Wis.2d

---

[3] *See:* Anderson, *The Impact of Public Sector Bargaining*, 1973 Wis. L. Rev. 986, 998–1000 (describing various statutory provisions.)

469, 485, 225 N.W.2d 658 (1975), *rev'd on other grounds,* 426 U. S. 482, 96 Sup. Ct. 2308, 49 L. Ed.2d 1 (1976).

Moreover, governmental employers perform a substantially different role than do private employers, and there are different reasons for according them certain prerogatives. In the private sector, collective bargaining is limited by the need to protect the "core of entreprenurial control," particularly power over the deployment of capital. If resources are to be employed efficiently in a market economy, capital must be mobile and responsive to market forces. *Libby, supra,* therefore recognized the importance of the employer's ability to "change the direction" of his enterprise, and to redirect his capital.

Different concerns are present in the public sector, however, and the "change of direction" test is not responsive to those concerns. In the public sector, the principal limit on the scope of collective bargaining is concern for the integrity of political processes.

As a public body composed of elected officials, a school board is vested with governmental powers and has a responsibility to act for the public welfare. The United States Supreme Court recognized this responsibility in *Hortonville Jt. School Dist. No. 1 v. Hortonville Ed. Asso.,* 426 U. S. 482, 495, 496, 96 Sup. Ct. 2308, 49 L. Ed.2d 1 (1976) :

> "State law vests the governmental, or policymaking, function exclusively in the School Board . . . . [T]he Board is the body with overall responsibility for the governance of the school district; it must cope with the myriad day-to-day problems of a modern public school system. . . ; by virtue of electing them the constituents have declared the Board members qualified to deal with these problems, and they are accountable to the voters for the manner in which they perform. . . ."

In municipal employment relations the bargaining table is not the appropriate forum for the formulation or management of public policy. Where a decision is essentially

concerned with public policy choices, no group should act as an exclusive representative; discussions should be open; and public policy should be shaped through the regular political process. Essential control over the management of the school district's affairs must be left with the school board, the body elected to be responsible for those affairs under state law.

The *Libby* "change of direction" test is of limited value in this setting.[4] The integrity of governmental decision-making may be implicated whether or not a decision involves a "change of direction." Thus in the *Beloit Case,* bargaining was not required with regard to decisions about classroom size, or the establishment of reading programs or summer school programs. Although a slight increase or decrease in classroom size could not seriously be said to change the direction of a school district's activities, such a decision is not subject to mandatory bargaining.

Nor is it singularly important whether a decision involves an employer's "essential enterprise." Although the essential enterprise of a school district is the education of its students, the district, as a public body, may serve other important public interests. Thus a hot lunch program provides nutrition to children who would not otherwise receive it; immunization programs promote public health; and school facilities may be made available for other public use. Although these programs would be ancillary to a district's "essential enterprise," they could well involve decisions which are better reserved to a

[4] The Commission *cites Van Buren Pub. Sch. Dist. v. Wayne Cty. Cir. Judge,* 61 Mich. App. 6, 232 N.W.2d 278 (1975), in which a Michigan court applied private sector standards to a school board's decision to subcontract its busing operation. However, the applicable Michigan statute contained no management rights clause and used language identical to the National Labor Relations Act. The Michigan court therefore looked for guidance to federal decisions under that Act which are inapplicable to the statutory language concerned here.

public forum. Formulation of basic policy, even in these "non-essential" areas, would be inappropriate for the bargaining table.[5] The "change of direction" or "essential enterprise" test is of limited usefulness in the public sector, therefore.

The standard proposed by the school district is no more useful, however. The district takes a severely restricted view of the scope of collective bargaining under sec. 111.70(1)(d), Stats. The district apparently contends that collective bargaining is not required with regard to any "decision."

The district does not define the types of "decision" in which bargaining would not be required, nor does it explain how these would be distinguished from the types of decision (*e.g.,* salary levels) where bargaining is firmly established. The district's position understandably does not consider the holding of the *Beloit Case* that a school board must bargain with regard to any decision primarily related to wages, hours and conditions of employment.[6] In *Beloit,* for example, bargaining was held to be mandatory with regard to decisions about teacher files, standards for dismissal, layoffs, and school calendars. The standard proposed by the district is simply untenable in light of the holding in *Beloit, supra.*[7]

---

[5] Although the *Beloit* decision indicates at several points that matters of "basic educational policy" are not subject to collective bargaining, this should not be taken as indicating that basic policy decisions in non-educational areas are bargainable. The reference to educational policy merely reflects the fact that the *Beloit Case* involved negotiations with a teachers' association over educational matters.

[6] This is because the district's brief was filed prior to the decision in *Beloit.*

[7] *State College Educ. Assn. v. PLRB,* 83 LRRM at 3079 (1973), cited by the district, is inapposite because that case was decided under a Pennsylvania statute containing an extensive management rights clause protecting the employer's control over matters of "inherent managerial policy" and specifying particular areas

The applicable standard is not that suggested by either party, but rather the "primary relationship" standard established in *Beloit*. The question is whether a particular decision is primarily related to the wages, hours and conditions of employment of the employees, or whether it is primarily related to the formulation or management of public policy. Where the governmental or policy dimensions of a decision predominate, the matter is properly reserved to decision by the representatives of the people. This test can only be applied on a case-by-case basis, and is not susceptible to "broad and sweeping rules that are to apply across the board to all situations. . . ." *Beloit, supra,* at 55.

Although the Commission was incorrect in applying private sector standards of collective bargaining in the instant case, the choice of standard does not affect the results. The decision to subcontract the district's food service program did not represent a choice among alternative social or political goals or values.

The policies and functions of the district are unaffected by the decision. The decision merely substituted private employees for public employees. The same work will be performed in the same places and in the same manner. The services provided by the district will not be affected. The decision would presumably be felt in only two ways; it is argued that it would result in a financial saving to the district, and the district's food service personnel will have to bargain with ARA for benefits which they enjoyed before the decision, including the loss of some 2,304 accumulated sick-leave days and participation in the Wisconsin Retirement Fund.

(budget formulation, organization structure, personnel policies, standards of service, and "the functions and programs of the public employer") within this category.

The primary impact of this decision is on the "conditions of employment"; the decision is essentially concerned with wages and benefits, and this aspect dominates any element of policy formulation. The Commission and the circuit court were therefore correct in holding that bargaining was mandatory with respect to the decision.

The district asks that, if the court should apply the "essential enterprise" test, the cause be remanded to the Commission for presentation of evidence on the question whether the district's food service program is an essential enterprise. We have stated that the application of the "essential enterprise" test is inappropriate in this case.

Furthermore, no remand is necessary to determine whether the food program is "primarily related" to wages, hours and conditions of employment. The district does not argue that the contract will affect the nature of its services, nor has it made an offer of proof or pointed to any prejudice. The nature of the decision to subcontract the operation was fully litigated before the Commission, and there is no reason to believe an additional hearing would produce significant new evidence.

The test set forth in *Beloit* does not represent a radical departure from past decisions, and the district cannot be heard to complain that it was caught off guard by that test. Indeed, as early as 1967, in *Joint School Dist. No. 8 v. Wis. E. R. Board,* 37 Wis.2d 483, 493, 155 N.W.2d 78 (1967), this court held that curriculum content was not subject to bargaining because it was ". . . within the scope of basic educational policy. . . ." The district cannot argue that it limited its presentation in reliance on some different standard when the hearing itself revolved around the question of the appropriate

standard. Under these circumstances, a remand for further hearing would serve no useful purpose.

## ONE MAN, ONE VOTE PRINCIPLE.

The district argues that the Municipal Employment Relations Act is unconstitutional under the one man, one vote principle of the fourteenth amendment. As a general rule, a municipality cannot question the constitutionality of a statute. *West Milwaukee v. Area Board Vocational T. & A. Ed.*, 51 Wis.2d 356, 365, 187 N.W.2d 387 (1971), *appeal dis.* 404 U.S. 981; *State ex rel. La Crosse v. Rothwell*, 25 Wis.2d 228, 233, 130 N.W.2d 806, 131 N.W.2d 699 (1964); *Columbia County v. Wisconsin Retirement Fund*, 17 Wis.2d 310, 116 N.W.2d 142 (1962). An exception is sometimes made in situations involving issues of great public concern, however. *Associated Hospital Service v. Milwaukee*, 13 Wis.2d 447, 109 N.W. 2d 271 (1961); *Fulton Foundation v. Department of Taxation*, 13 Wis.2d 1, 11, 108 N.W.2d 312, 109 N.W.2d 285 (1961).

The district takes the position that the decision of the circuit court "destroys" representative government by giving employees undue control over the governmental affairs of the district. The district maintains that:

"The equal protection clause of the Fourteenth Amendment prevents the decisions of an elected governmental body from being subject to collective bargaining with a private labor organization."

To accept this proposition, this court would have to reverse *Beloit* and every other case upholding collective bargaining in the public sector. *See, e.g.: Joint School Dist. No. 8 v. Wis. E. R. Board, supra.* The district offers little authority for so radical a proposal, and cites

only federal district court cases requiring that elections be conducted so as to give equal weight to each vote cast. This case does not concern the election of the school board members, nor does it concern the effectiveness of votes, except in a most indirect sense.

The district argues that collective bargaining gives the bargaining representative disproportionate strength which dilutes the effectiveness of the votes of nonunion members. As the circuit court pointed out, every time governmental units contract with a private party, the private party has a disproportionate interest in, and influence upon, the governmental decision, but this influence does not constitute a denial of equal protection.

In addition, this court has repeatedly stated that the duty to bargain collectively does not require the school board to reach any agreement with the union. *See: Beloit, supra,* at 61; *Joint School Dist. No. 8 v. Wis. E. R. Board, supra,* at 494, 495. Indeed, sec. 111.70 (1) (d), Stats., contains an explicit provision to that effect. Because the school board is under no obligation to accept the union's proposal, it cannot be said that collective bargaining unconstitutionally dilutes the votes of the remainder of the public.

The Commission by its order granted considerable affirmative relief, and in its brief has raised the issue of its power to make such an order. However, the district does not challenge the Commission's power to make the order involved in this case. Since the remedial order of the Commission is not challenged on this appeal, we deem it unnecessary to consider the propriety of the order. We conclude that the judgment of the trial court should be affirmed.

*By the Court.*—Judgment affirmed.