ANTHONY S. EARL, Secretary Department of Natural Resources
You have requested my opinion regarding the portion of sec. 144.441 (3), Stats., which reads: "The department shall reduce or waive [the Waste Management Fund] fees for solid waste resulting from mining if it determines that the reclamation bonding and other requirements of ss. 144.81 to 144.94 are sufficient to accomplish the purposes of this subsection." Your particular concern is whether there can ever be circumstances in which the Department of Natural Resources will actually have the authority to reduce or waive the fee inasmuch as the Waste Management Fund and the reclamation bonding and other requirements of secs. 144.81 through 144.94, Stats., appear to fulfill entirely separate purposes.
I am of the opinion that the purposes of the Waste Management Fund ("WMF") and the reclamation bonding and other requirements of secs. 144.81 through 144.94, Stats., Metallic Mining Reclamation Act, hereinafter "MMRA," are not so exclusive of each other that there may not be circumstances in which the Department of Natural Resources (the "Department"), upon a proper showing, could reduce or waive the WMF fees for solid waste resulting from mining. I am of the further opinion that authority to reduce or waive the WMF fees for mine waste does not require a determination that the general purposes of the WMF and the MMRA, in their entirety, *Page 375 
are the same but only that the specific portions of a mine reclamation plan or related statutory undertakings will be sufficient to accomplish the purposes of sec. 144.441 (3)(d), Stats., with respect to a type of waste or portion thereof. The reasons for my opinion are set forth below.
As you have correctly pointed out in your letter, the WMF is limited by statute to certain fixed purposes. Stated generally, the purposes are to fund the costs of long-term care of a site accruing after the twenty- or thirty-year responsibility of the owner has terminated or to fund the cost of repairing the site or the environmental damage caused by the site, when such repairs are occasioned by events not anticipated in the plan of operation if the events pose a substantial hazard to public health or welfare.
By contrast, the legislative purpose behind the reclamation bonding requirement does seem to parallel more closely the purposes of the closure and long-term care bond required by sec. 144.44 (3)(c), Stats., namely, assurance that the site closure obligations and the owner's long-term care requirements will be met.
Nonetheless, the time-honored maxim of statutory construction is to give meaning to every portion of a statute. Unified S.D.No. I of Racine County v. WERC, 81 Wis.2d 89, 259 N.W.2d 724
(1977). Hence, such a direct and unambiguous grant of authority would be expected to have an appropriate mode of exercise.
In addition the Legislature has given evidence in sec. 144.43 (1m), Stats., that with respect to solid waste disposal, metallic mining represents a special case. In pertinent part that section reads:
 The rules [for the identification and regulation of metallic mining wastes] shall take into consideration the special requirements of metallic mining operations in the location, design, construction and operation and maintenance of sites and facilities for the disposal of metallic mining wastes as well as any special environmental concerns that will arise as a result of the disposal of metallic mining wastes. In adopting the rules, consideration shall also be given to research, studies, data and recommendations of the U.S. environmental protection agency on the subject of metallic mining wastes arising from the agency's efforts to implement the resource conservation and recovery act of 1976, P.L. 94-580. *Page 376 
Besides this clear expression by the Legislature that metallic mining waste presents unique problems, other practical aspects of the law of solid waste tend to show that the kind of particularized treatment of mining waste envisioned by a reduction or waiver of the WMF was clearly within the contemplation of the Legislature. For example, the language which established the WMF leaves no doubt that the Legislature intended that contributions to the fund come from the full spectrum of solid waste types:
 Each owner or operator of a licensed site for the land disposal of solid waste or the disposal of hazardous waste shall periodically pay to the department a fee for each ton, or equivalent volume as determined by rule of the department, of solid waste received and disposed of at the site during the preceding reporting period.
Sec. 144.441 (3), Stats. But if the Department could not make a reduction or waiver for mining solid waste, the burden of building up the WMF to its limit of $15,000,000 would fall almost entirely on the metallic mining industry because of the broad definition of solid waste and the enormous quantities of waste produced in a metallic mining operation as compared to that produced by domestic or non-mining industrial sources. The result of that occurrence would be to render the general language of sec. 144.441 (3), Stats., an assessment on a very particularized industry rather than the full spectrum of solid waste sources. If that had been the intention of the Legislature, it would certainly have expressed itself in more direct and explicit terms, such as that found in sec. 144.441 (3)(c), Stats. Therefore, while the purposes of the WMF and the reclamation bonding or other requirements of the MMRA are generally dissimilar, it would appear that the Legislature envisioned circumstances where the two overlapped sufficiently that it required, in those circumstances, that the WMF fee be reduced or waived.
Other than the question of the authority of the Department to reduce or waive the WMF, your letter also suggests the companion question: When would it be appropriate for the Department to reduce or waive the WMF? Some guidance on this point may be obtained by looking at the sentence which precedes the authorization in question. That sentence reads as follows: "Solid waste materials approved by *Page 377 
the department for lining or capping a dike, berm or road construction within a site for land disposal of solid waste shall not be subject to the fee imposed under this [section]." Sec. 144.441 (3), Stats.
This provision seems to focus on two things, types of materials and certain uses of materials. The lining materials, for example, are presumably exempt from the fee because by their nature they impose no significant detrimental effect on the environment and because they can be used for some purpose which ameliorates the environmental hazards of the solid waste itself. Other materials which may be used in haulageways or other on-site road construction are presumably of a type which do not significantly jeopardize the protection of the environment although they have no ameliorative effect as such. Thus, while granting the Department authority to reduce or waive the WMF fee in mining waste disposal sites, the Legislature has also affirmatively, albeit implicitly, recognized differences in fill materials or methods of disposal which are part of the mining operation.
The key to the decision of which materials or methods qualify for a reduction or waiver is whether there are long-term nonowner related responsibility or nonanticipated environmental impacts affecting public health or welfare. The Legislature has delegated to the informed judgment and expertise of the Department the authority to decide precisely what differences in type of material or method are sufficient to reasonably assure that the nonowner or nonanticipated impacts are so minimal as to support a finding that a reduction or waiver of the WMF fee is appropriate.
The determination by the Department that there are no nonanticipated environmental impacts which would pose a substantial hazard to the public health or welfare will be difficult. The case for a waiver is, therefore, the most difficult. Despite the difficulty, the Department can draw upon its own experience and that of others to achieve a reasonable level of assurance that the reclamation plan, and the supporting bond, will prevent the kind of long-term environmental problems and public funding obligations which are addressed in sec. 144.441 (3) (d), Stats., and otherwise provided for by sec. 144.83 (4)(f), Stats.
Although the questions which have to be answered by the Department prior to reduction or waiver of the WMF fee are outside the *Page 378 
expertise of this office, it would appear that there are, at least arguably, certain types of mine refuse or methods of disposal which experience might reliably show to be appropriate for consideration for a reduction or waiver. I will proffer several examples merely to amplify the arguable possibility and not to suggest the need or requirement for reduction or waiver.
Since a significant fraction of mine refuse is overburden and since a sizeable fraction of that overburden may be soils or gravel which experience has shown can be reliably stabilized and reclaimed, such materials may be appropriate for WMF fee reduction or even waiver. Another example might be generally inert waste rock which is used as roadbed for haulageways. Precedent for this can be found in the Legislature's view of road construction within other solid waste disposal sites. Sec. 144.441 (3), Stats. A third, but by no means final circumstance, may be indicated in the Legislature's concern about surface mining. Secs. 144.84 (1) and 144.85 (1), (5) (c), Stats. The Department may find that reduction of WMF fees for certain types of backfill material used in an underground mining operation is appropriate to reflect the legislative purpose of sec. 144.84, Stats.
Finally, it should be noted that the MMRA, sec. 144.85 (4)(b), Stats., provides for phased reclamation. Such phased reclamationmay be precisely the kind of reasonably reliable experience needed to support findings about the accuracy of the Department's assessment for future WMF fee schedules.
BCL:RMR