LOCAL 2236, AFSCME, AFL–CIO, Petitioner-
Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COM-
MISSION, and Chippewa County, Respondents.

Court of Appeals

*No. 90–0127. Submitted on briefs June 5, 1990.—Decided
August 14, 1990.*

(Also reported in 461 N.W.2d 286.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Bruce F. Ehlke* of *Lawton & Cates, S.C.* of Madison.

On behalf of the respondent, Wisconsin Employment Relations Commission, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *David C. Rice,* assistant attorney general.

On behalf of the respondent, Chippewa County, the cause was submitted on the brief of *Stephen L. Weld* and *Joel L. Aberg* of *Mulcahy & Wherry, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Local 2236 of AFSCME (the union) appeals a judgment affirming the Wisconsin Employment Relation Commission's determination that Chippewa County's decision to sell its health care center was a permissive rather than mandatory subject of collective bargaining. The union contends that the decision to sell was primarily related to considerations of wages and that the sale was, in effect, a device to subcontract the services to another and, therefore, a mandatory subject of

bargaining. Because we agree with the commission's determination that Chippewa County's sale of its health care facility was primarily related to its management and public policy making functions and was not a decision to subcontract for the same services previously provided, we affirm the commission's determination.

Chippewa County has been operating a health care facility for a substantial period of time. Prior to the county's decision to sell its facility, the health care center had incurred significant operating deficits. In May 1986, the county sold its facility by land contract to Dennis Heyde, the operator of a nursing home in Bloomer, Wisconsin. Both Heyde, the county and the county's then health care director assured the public and the patients that the facility would continue in operation and extend the same services to the existing clientele even though there was a change of ownership.

The union charged the county with a prohibited practice when it refused to bargain its decision to sell the center, alleging that this decision was a mandatory subject of bargaining. The commission determined that the decision to sell the center was not a mandatory subject of bargaining and dismissed the union's complaint. The matter was appealed to the circuit court for Chippewa County, which remanded it to the commission with directions to apply the "primarily related" standard established in *Beloit Educ. Ass'n v. WERC*, 73 Wis. 2d 43, 242 N.W.2d 231 (1976) and developed in subsequent cases. In reaffirming its determination that the county's decision to sell was not a mandatory subject of bargaining, the commission reiterated its previous findings of fact and conclusions of law and incorporated specific findings in regard to the primarily related standard. The circuit court affirmed the commission's determination.

Under the Municipal Employment Relations Act (MERA), municipal employers have a duty to collectively bargain with their organized workers about wages, hours and conditions of employment. These are mandatory subjects of bargaining, and municipal employers may not refuse to negotiate such issues. Section 111.70(1)(a), Stats. The employer, however, is not "required to bargain on subjects reserved to management and direction of the governmental unit . . .." *Id.* Issues falling within the management and public policy area are permissive subjects of bargaining that need not be negotiated. Thus MERA attempts to accommodate the interests of public employees with those of the public through its municipal officials. Where these interests conflict the court applies its "primarily related" standard.

> As applied on a case-by-case basis, this primarily related standard is a balancing test which recognizes that the municipal employer, the employees, and the public have significant interests at stake and that their competing interests should be weighed to determine whether a proposed subject for bargaining should be characterized as mandatory. If the employees' legitimate interest in wages, hours, and conditions of employment outweighs the employer's concerns about the restriction on managerial prerogatives or public policy, the proposal is a mandatory subject of bargaining. In contrast, where the management and direction of the school system or the formulation of public policy predominates, the matter is not a mandatory subject of bargaining.

*West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 9, 357 N.W.2d 534, 538 (1984). While the impact of the implementation of permissive subjects of bargaining must also be negotiated, that issue is not raised in the instant case.

The commission's determination that the county's decision to sell was a permissive subject of bargaining is a question of law that we will review in the same fashion as the circuit court. *Boynton Cab Co. v. DILHR,* 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980). The commission has developed significant experience and expertise in determining what are mandatory and what are permissive subjects of bargaining. Accordingly, this court will give "great weight" to the commission's ruling on the issue of mandatory bargaining. *West Bend,* 121 Wis. 2d at 13, 357 N.W.2d at 540. We must therefore sustain the commission's determination provided the commission has properly applied the existing law and its conclusion has a rational basis of support. *Id.*

The union first contends that the commission incorrectly concluded that the county's decision to abandon the services offered at the health care center was not a mandatory subject of bargaining. The union argues that the county was primarily interested in avoiding high labor costs. The union claims that the decision to sell did not represent a choice among alternative social policy goals. Rather, the decision was essentially related to wages and benefits, thus requiring mandatory bargaining. Moreover, the union argues that the commission failed to apply the "primarily related" standard. The union contends that despite lip service to a balancing test, the commission actually applied a per se test based on the nature of the county's action rather than balancing specific managerial or public interests against those of the employees.

We agree with the union that the primarily related test is not determined by set formulas or conclusory labels. That does not mean, however, that the county's

only interest to be placed upon the scales is in saving labor costs. The record indicates that the operating deficit was caused by frozen federal and state medical funds and a decline in the resident population as well as high labor costs. Thus, the county was required to make a determination as to whether the services being offered by the center were going to be continued despite the substantial financial losses being incurred by the taxpayers of that county. The county made a public policy decision not to offer the services extended through the center to the county's citizens at public expense. It is the right of the county board to control the flow of tax dollars, establish priorities as to what issues tax revenues will be allocated and apply those dollars as the board members determine to be appropriate for the health, welfare and benefit of the citizens they serve. It is this right which the commission considered in determining that the decision to sell the center was not a mandatory subject of bargaining. The commission's determination correctly reflects the law established by *Beloit* and its progeny and is a rationally based conclusion that we are required to affirm.

The union argues that the commission relied extensively and incorrectly on *City of Brookfield v. WERC,* 87 Wis. 2d 819, 275 N.W.2d 723 (1979). The union contends that *Brookfield* "harmonized" the exclusive grant of power to cities in ch. 62, Stats., with sec. 111.70(1)(a), Stats., and, thus, does not apply to counties. We disagree.

The *Brookfield* decision rests primarily on the concern for the political process and fiscal responsibility. Indeed, that court quoted *Unified School Dist. No. 1 v. WERC,* 81 Wis. 2d 89, 99, 259 N.W.2d 724, 730 (1977), for the proposition that "the principal limit on the scope of collective bargaining is concern for the integrity of

political processes." *Brookfield,* 87 Wis. 2d at 830, 275 N.W.2d at 728. These concerns are equally applicable whether the municipal employer is a school district as in *Unified School Dist.,* a city as in *Brookfield* or a county as in this case. The legislature gave county boards the power to buy and sell property. Section 59.07, Stats. Contrary to the union's contention, sec. 111.70(1)(a), Stats., in no way limits that power under the facts of this case.

The union also suggests that the arrangement between the county and Heyde was merely a subcontracting agreement whereby the county continued to offer the same services to the public through its agreement with Heyde. As the argument continues, a decision to subcontract does not affect the policies, functions or services of the municipal employer. A subcontracting decision is essentially concerned with wages and benefits, thus mandating collective bargaining. *Unified School Dist.,* 81 Wis. 2d at 102–03, 259 N.W.2d at 732.

The question of whether a subcontract exists is a mixed question of law and fact. The facts as determined by the commission will not be disturbed as long as there is any substantial evidence that supports the findings made by the commission. *Boynton,* 96 Wis. 2d at 404, 291 N.W.2d at 854. Substantial evidence means evidence that a reasonable mind might accept as adequate to make the findings that were made by the commission. *Gilbert v. State Med. Exam. Bd.,* 119 Wis. 2d 168, 195, 349 N.W.2d 68, 80 (1984).

The union does not challenge the factual findings made by the commission in this case. None of those factual findings support the union's assertion that a subcontract was created between the county and Heyde.

715

The essence of a subcontract is the agreement, either express or implied, by one party to perform certain labor or services for another. In the present case, the county surrendered all control of the physical plant and operations of the center when the sale to Heyde was completed. They retained only the interest of a secured party in a land contract. No other rights were reserved to the county as a result of this sale. The union argues that the operation continues essentially as before (except for the center's relationship with its employees). While Heyde has continued the operation, that fact represents only his management decision as to the operation of this center and not proof of a subcontracting relationship between the county and him. It is clear that power is vested in Heyde and that he is under no obligation to run the center in any particular way or to offer any particular services as a result of his purchase of this property. The commission specifically found that the control of the operation of the center did not remain directly or indirectly with the county. In the absence of such a finding, no subcontractual relationship exists between these parties.

We therefore conclude that the commission correctly determined that the county's decision to sell the center was not a mandatory subject of bargaining and that the county did not commit a prohibited practice in its refusal to bargain that decision with the union.

*By the Court.*—Judgment affirmed.