**WEST BEND EDUCATION ASSOCIATION,**
Petitioner-Respondent,

v.

**WISCONSIN EMPLOYMENT RELATIONS COMMISSION,**
Respondent-Appellant-Petitioner,

**WEST BEND JOINT SCHOOL DISTRICT No. 1,**
Co-Appellant-Petitioner.

Supreme Court

*No. 82–1824. Argued September 4, 1984.—
Decided November 13, 1984.*

(Also reported in 357 N.W.2d 534.)

1

For the respondent-appellant-petitioner the cause was argued by *John D. Niemisto,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the co-appellant-petitioner there were briefs by *Michael R. Wherry, Robert W. Mulcahy* and *Mulcahy & Wherry, S.C.,* Milwaukee, and oral argument by *Michael R. Wherry.*

For the petitioner-respondent there was a brief by *Michael L. Stoll,* Madison, staff counsel for the Wisconsin Education Association Council, with assistance from *Gordon McQuillen,* Madison, and oral argument by *Mr. Stoll.*

Amicus curiae brief filed by *Michael J. Julka, Kenneth B. Axe* and *Isaksen, Lathrop, Esch, Hart & Clark,* Madison, counsel for the Wisconsin Association of School Boards, Inc.

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed October 25, 1983, affirming an order of the circuit court for Washington county, J. Tom Merriam, Circuit Judge, which in turn affirmed in part and reversed in part a ruling of the Wisconsin Employment Relations Commission on the duty of the parties to bargain certain layoff proposals.

This review arises from the December 5, 1979, petition by the West Bend Joint School District No. 1 (District) and the West Bend Education Association (Association) to the Wisconsin Employment Relations Commission (WERC) for a declaratory ruling[1] to determine

---

[1] Sec. 111.70(4)(b), Stats. 1979–80, provides in part as follows:

"Whenever a dispute arises between a municipal employer and a union of its employes concerning the duty to bargain on any subject, the dispute shall be resolved by the commission on petition for a declaratory ruling."

whether the District had a duty to bargain under sec. 111.70(1)(d), Stats. 1979–80, on several contract proposals relating to layoffs.[2] Two of these proposals are currently in dispute before the court: One provides that "layoffs of teachers shall be accomplished in accordance with the time frame and provisions of Section 118.22, Wis. Stats.," which in turn provides a time sequence and procedure for the annual renewal and nonrenewal of teachers' contracts. The other provides that "[t]he lay off of each teacher shall commence on the date that he or she completes the teaching contract for the current school year."[3] The proposals thus relate to the timing and effective date of layoffs.

The parties agree that it is legally permissible for them to reach an agreement on these proposals. See *Mack v. Joint School District No. 3,* 92 Wis. 2d 476, 285 N.W.2d 604 (1979). They disagree as to whether these proposals are mandatory subjects of bargaining.

---

[2] A single staff reduction (layoff) proposal was before WERC and the circuit court, with the request being for a declaratory ruling on several disputed provisions of the proposal. For simplicity, we refer to the disputed provisions as "proposals."

[3] The following italicized language shows the proposals that are in dispute before the court:

"*ARTICLE XXVII. STAFF REDUCTION*

"1. If a reduction in the number of teachers for the forthcoming school year is necessary, the provisions set forth in this Article shall apply. . . .

"Necessary layoffs of teachers shall be accomplished *in accordance with the time frame and provisions of Section 118.22, Wis. Stats. The Board shall inform the teacher(s) by preliminary notice in writing that the Board is considering nonrenewal of the teacher's contract for reasons of layoff and shall provide such teacher(s) with the right to a private conference, as provided in Section 118.22, Wis. Stats.* Employes nonrenewed under this Article shall have the rights to reemployment set forth in paragraphs 5, 6 and 7 of this Article.

. . .

"*4. The lay off of each teacher shall commence on the date that he or she completes the teaching contract for the current*

WERC ruled that these proposals were not mandatory subjects of bargaining within the meaning of sec. 111.-70(1)(d), Stats. 1979–80. The circuit court reversed the WERC ruling, and the court of appeals affirmed the order of the circuit court on these two proposals.[4] We affirm the decision of the court of appeals.[5]

*school year*, and such teacher shall be paid for services performed under that contract to the date of such lay off in accordance with this Agreement. . . ."

[4] Two additional layoff proposals which were before WERC and the circuit court are not before this court on review: a proposal requiring the district to discuss the necessity of layoffs and a proposal concerning the rights to reemployment of laid off teachers. WERC did not rule separately on each proposal. Its conclusion of law was, "That the proposal of West Bend Education Association relating to 'Staff Reduction' does not constitute a mandatory subject of bargaining within the meaning of Section 111.70(1)(d) of the Municipal Employment Relations Act." The circuit court interpreted WERC as ruling that the proposal requiring the district to discuss the necessity of layoffs was a non-mandatory subject of bargaining and that the proposal on reemployment rights was a mandatory subject of bargaining. On the basis of this interpretation the circuit court affirmed WERC's rulings on these two proposals.

[5] The request for a declaratory ruling in this case originally arose out of the reopening of the 1977–1980 collective bargaining agreement between the parties. Article XXVII of that agreement provided for a May 1 preliminary notice of layoffs and set forth layoff procedures to be followed whenever "a reduction in teachers for the forthcoming school year is deemed necessary by the Board of Education due to anticipated decreases in enrollment, educational program changes and/or budgetary or financial limitations which adversely affect teacher staffing needs. . . ."

While the issue arose in the context of contract reopener talks, the issue before WERC and before the courts concerns the inclusion of the layoff proposals in the 1979–1981 contract.

The court of appeals, citing *Mack v. Joint School District No. 3*, 92 Wis. 2d 476, 285 N.W.2d 604 (1979), concluded in this case that "[o]nce a layoff clause was included in prior collective bargaining agreements between the West Bend School District and the teachers, such a clause became a mandatory subject of bargaining."

Sec. 111.70(1)(d) sets forth the legislative delineation between mandatory and nonmandatory subjects of bargaining.[6] It requires municipal employers, a term defined as including school districts, sec. 111.70(1)(a), to bargain "with respect to wages, hours and conditions of employment." At the same time it provides that a municipal employer "shall not be required to bargain on subjects reserved to management and direction of the governmental unit except insofar as the manner of exercise of such functions affects the wages, hours and conditions of employment of the employes." Furthermore, sec. 111.-70(1)(d) recognizes the municipal employer's duty to act for the government, good order and commercial bene-

---

We do not base our decision on the court of appeals' reasoning. WERC, the District, and the Association agree that the court of appeals' reasoning was inconsistent with the "evaporation" theory, that is, that permissive subjects included in a collective bargaining agreement "evaporate" once the agreement expires if either party refuses to bargain on those subjects.

[6] Sec. 111.70(1)(d), Stats. 1979–80, provides:

"(d) 'Collective bargaining' means the performance of the mutual obligation of a municipal employer, through its officers and agents, and the representatives of its employes, to meet and confer at reasonable times, in good faith, with respect to wages, hours and conditions of employment with the intention of reaching an agreement, or to resolve questions arising under such an agreement. The duty to bargain, however, does not compel either party to agree to a proposal or require the making of a concession. Collective bargaining includes the reduction of any agreement reached to a written and signed document. The employer shall not be required to bargain on subjects reserved to management and direction of the governmental unit except insofar as the manner of exercise of such functions affects the wages, hours and conditions of employment of the employes. In creating this subchapter the legislature recognizes that the public employer must exercise its powers and responsibilities to act for the government and good order of the municipality, its commercial benefit and the health, safety and welfare of the public to assure orderly operations and functions within its jurisdiction, subject to those rights secured to public employes by the constitutions of this state and of the United States and by this subchapter."

fit of the municipality and for the health, safety and welfare of the public, subject to the constitutional and statutory rights of the public employees.

Sec. 111.70(1)(d) thus recognizes that the municipal employer has a dual role. It is both an employer in charge of personnel and operations and a governmental unit, which is a political entity responsible for determining public policy and implementing the will of the people. Since the integrity of managerial decision making and of the political process requires that certain issues not be mandatory subjects of collective bargaining, *Unified School District No. 1 of Racine County v. WERC*, 81 Wis. 2d 89, 259 N.W.2d 724 (1977), sec. 111.70(1)(d) provides an accommodation between the bargaining rights of public employees and the rights of the public through its elected representatives.

In recognizing the interests of the employees and the interests of the municipal employer as manager and political entity, the statute necessarily presents certain tensions and difficulties in its application. Such tensions arise principally when a proposal touches simultaneously upon wages, hours, and conditions of employment and upon managerial decision making or public policy. To resolve these conflict situations, this court has interpreted sec. 111.70(1)(d) as setting forth a "primarily related" standard. Applied to the case at bar, the standard requires WERC in the first instance (and a court on review thereafter) to determine whether the proposals are "primarily related" to "wages, hours and conditions of employment," to "educational policy and school management and operation," to " 'management and direction' of the school system" or to "formulation or management of public policy." *Unified School District No. 1 of Racine County v. WERC*, 81 Wis. 2d 89, 95–96, 102, 259 N.W.2d 724 (1977). This court has construed "primarily" to mean "fundamentally," "basi-

cally," or "essentially," *Beloit Education Asso. v. WERC*, 73 Wis. 2d 43, 54, 242 N.W.2d 231 (1976).

As applied on a case-by-case basis, this primarily related standard is a balancing test which recognizes that the municipal employer, the employees, and the public have significant interests at stake and that their competing interests should be weighed to determine whether a proposed subject for bargaining should be characterized as mandatory. If the employees' legitimate interest in wages, hours, and conditions of employment outweighs the employer's concerns about the restriction on managerial prerogatives or public policy, the proposal is a mandatory subject of bargaining. In contrast, where the management and direction of the school system or the formulation of public policy predominates, the matter is not a mandatory subject of bargaining. In such cases, the professional association may be heard at the bargaining table if the parties agree to bargain or may be heard along with other concerned groups and individuals in the public forum. *Unified School District No. 1 of Racine Co. v. WERC, supra,* 81 Wis. 2d at 102; *Beloit Education Asso., supra,* 73 Wis. 2d at 50–51. Stating the balancing test, as we have just done, is easier than isolating the applicable competing interests in a specific situation and evaluating them.[7]

First we observe that the two proposals in issue here are not concerned with the District's decision that it

---

[7] For a discussion of the scope of bargaining in the public sector and the balancing test, see, *e.g.,* Weisberger, *The Appropriate Scope of Bargaining in the Public Sector: The Continuing Controversy and the Wisconsin Experience,* 1977 Wis. L. Rev. 685; Clark, *The Scope of the Duty to Bargain in Public Employment,* in *Labor Relations Law in the Public Sector* (Knapp ed. 1977); Corbett, *Determining the Scope of Public Sector Collective Bargaining: A New Look via a Balancing Formula,* 40 Mont. L. Rev. 231 (1979); *Developments in the Law—Public Employment,* 97 Harv. L. Rev. 1611, 1682–1700 (1984).

is necessary to reduce the work force by layoff. The parties agree that the decision of whether retrenchment is necessary belongs to the Board. In *City of Brookfield v. WERC,* 87 Wis. 2d 819, 833, 275 N.W.2d 723 (1979), a case involving firefighters, we held that "a budgetary lay off decision is not a subject of mandatory bargaining," but noted that the effects of the layoff were mandatory subjects of bargaining. Rather, the proposals currently before the court (1) require the District to notify the teachers by a certain date of the District's decision to lay off and (2) establish the date of layoff as the end of the current school year. The proposals thus relate to the timing and effective date of layoff, the necessity of which is decreed by the District.

When WERC viewed the competing interests surrounding the timing and effective date of layoff, it concluded that the proposals were not mandatory subjects of bargaining. The effect of WERC's conclusion was to make the proposals permissive subjects of bargaining and thus allow the District to determine unilaterally when notice of layoff would be given and when layoff would be implemented. If the proposals had been viewed as mandatory subjects of bargaining, the District could not decide these matters unilaterally. The District would have to bargain these proposals to agreement or to impasse.

WERC reasoned that the effect of the proposals would be to force the District to initiate layoffs on the basis of anticipated, rather than actual, events, *e.g.,* anticipated reductions in revenue or enrollment rather than the actual reductions in revenue or enrollment. WERC viewed the proposals as so intertwined with the decision of layoff as to constitute an undue interference with and an "unwarranted restriction upon" the District's power to lay off. WERC therefore concluded that the proposals were not mandatory subjects of bargaining.

WERC's position in this review is that "since the District is not required to bargain over the necessity for such layoffs, it follows that it has complete discretion to make that decision and to implement it on whatever date it determines to be in the best interests of the District." (WERC's brief, p. 26.)

The initial question to be considered is this court's scope of review of WERC's ruling in this case.[8] The facts were stipulated; the only evidence before WERC was the proposals. WERC's ruling that the proposals are not mandatory subjects of bargaining involves an application of this court's interpretation of sec. 111.70 (1) (d), Stats. 1979–80, to the particular proposals in issue.[9] Generally questions relating to interpretation and application of statutes are labeled questions of law,[10] and the blackletter rule is that a court is not bound by an agency's conclusions of law.[11] Courts, however, frequently refrain from exercising the power to substitute their interpretation or application of a statute

---

[8] The scope of review is the same for the circuit court, for the court of appeals and this court. *Boynton Cab Co. v. ILHR Dept.*, 96 Wis. 2d 396, 405, 291 N.W.2d 850 (1980).

[9] Sec. 227.20(3), Stats. 1979–80, provides that "[t]he court shall separately treat disputed issues of agency procedure, interpretations of law, determinations of fact or policy within the agency's exercise of delegated discretion." No one asserts that this case presents a disputed issue of agency procedure, determination of fact or policy within the agency's exercise of delegated discretion.

[10] In *Libby, McNeill & Libby v. WERC*, 48 Wis. 2d 272, 278, 179 N.W.2d 805 (1970), a case involving the private sector, this court held that whether or not the proposal "is a mandatory bargaining subject is clearly an issue of law."

[11] See, *e.g., Nottelson v. ILHR Dept.*, 94 Wis. 2d 106, 115, 287 N.W.2d 763 (1980). Questions of law are reviewable *ab initio* by the court, and the court may properly substitute its judgment for that of the agency. *American Motors Corp. v. ILHR Dept.*, 101 Wis. 2d 337, 353–54, 305 N.W.2d 62 (1981).

for that of an agency charged with the administration of the law.

The statutes, as well as the cases, caution that under certain circumstances a court should defer to the agency's conclusions of law. Sec. 227.20(10), Stats. 1979–80, provides that upon review of an agency's determination, "due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved. . . ." Our cases similarly recognize that if the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency's conclusions are entitled to deference by the court. Where a legal question is intertwined with factual determinations or with value or policy determinations or where the agency's interpretation and application of the law is of long standing,[12] a court should defer to the agency which has primary responsibility for determination of fact and policy. *Nottelson v. ILHR Dept.*, 94 Wis. 2d 106, 115–118, 287 N.W.2d 763 (1980). Thus, our cases describe various degrees of authoritative weight which may be given to an agency's interpretation and application of a law, depending on the circumstances.[13]

---

[12] Where the question is "very nearly" one of first impression, and the agency has not developed expertise or a body of precedent on the question, the court is to give the agency's conclusion "due weight," or "great bearing," but not "great weight." *Beloit Education Asso. v. WERC*, 73 Wis. 2d 43, 68, 242 N.W.2d 231 (1976).

[13] The rules of scope of review are broad and general, and "the scope of review of questions of law defies encapsulation in a formula." Davis, 1982 Supplement to Administrative Law Treatise sec. 29.00–6, p. 562. Professor Davis suggests that "the formulas to which courts pay lip service in their opinions are guides that leave a good deal of room for judicial discretion, which varies in response to judicial impressions of facts and circumstances of particular cases." *Id.* at 563. *See also*, Hewitt,

In this case the question of law, which is the bargaining nature of the proposals, is intertwined with facts, values and policy. WERC, in contrast to the courts, has special competence in the area of collective bargaining[14] and has developed significant experience in deciding cases involving the issue of mandatory bargaining.[15] Under our cases, these factors argue in favor of giving "great weight" to WERC's rulings on the bargaining nature of the proposals. Consequently we should affirm WERC's conclusions regarding the bargaining nature of proposals if a rational basis exists for them or, to state the rule in another way, if the agency's view of the law is reasonable even though an

*The Scope of Judicial Review of Administrative Agency Decisions in Wisconsin*, 1973 Wis. L. Rev. 554, 575: ". . . the court has deferred to agencies in an inconsistent manner. The court employs diferent review standards in cases involving similar issues without attempting to resolve the conflict. Although the factors surveyed . . . seem to play some part in influencing the court's choice of standards, none provides a comprehensive rationale for the court's behavior."

[14] The court has said that WERC's determinations should be accorded considerable weight since it has "considerable expertise in the field, with the perspective that comes from continued dealing with labor controversies of all kinds." *Teamsters Local 200 v. WERC*, 51 Wis. 2d 391, 404, 187 N.W.2d 364 (1971) (footnote omitted).

[15] WERC decided the instant case approximately five years after this court decided the *Beloit* case in which this court interpreted sec. 111.70(1)(d) as establishing "the primary relationship standard," that is, a balancing test and a case by case approach for determining the duty to bargain a particular proposal. *Beloit Education Asso. v. WERC*, 73 Wis. 2d 43, 55, 242 N.W.2d 231 (1976); *Unified School District No. 1 of Racine Co. v. WERC*, 81 Wis. 2d 89, 102, 259 N.W.2d 724 (1977). During those intervening years, WERC has had numerous cases in which it had to apply the balancing test and to develop the case-by-case approach this court has required under sec. 111.70 (1)(d).

alternative view is also reasonable.[16] This court should not apply the balancing test *ab initio* to determine the mandatory bargaining nature of the proposals in issue.

On examination of WERC's memorandum decision we find, however, that in this case, WERC did not apply the balancing test we have set forth in our cases. WERC stopped its analysis—that is, stopped its application of the "primarily related" standard and stopped its balancing—when it concluded that the proposal was significantly related to questions of management prerogative.

WERC focused on only one side of the question—on the impact on the employer—but the proposals in issue arguably relate to wages and conditions of employment as well as to questions of management prerogatives and public policy.[17] WERC's ruling failed to con-

[16] See, *e.g., Milwaukee County v. ILHR Dept.*, 80 Wis. 2d 445, 455–56, 259 N.W.2d 118 (1977). Other cases state that the reviewing court should not upset an agency's conclusion of law if there is a rational basis for it, *Blackhawk Teachers' Federation v. WERC*, 109 Wis. 2d 415, 421, 326 N.W.2d 247 (Ct. App. 1982), *Dairy Equipment Co. v. ILHR Dept.*, 95 Wis. 2d 319, 327, 290 N.W.2d 330 (1980), or if the agency's view of the law is reasonable, even though an equally reasonable alternative view exists. *Bruns Volkswagen, Inc. v. ILHR Dept.*, 110 Wis. 2d 319, 322, 328 N.W.2d 886 (Ct. App. 1982).

[17] While WERC's brief supports the conclusion that WERC was aware of the impact of the provisions on wages and hours, the WERC decision, in which the balancing should have been revealed, does not discuss these interests.

This is not to say that WERC did not consider any of the Association's contentions in its decision. It considered and rejected the Association's argument that the provisions were similar to seniority provisions and the Association's argument that *Mack v. Joint School District No. 3*, 92 Wis. 2d 476, 285 N.W.2d 604 (1979), held the proposals mandatory. These arguments and WERC's responses to them, however, did not deal with the impact of the contested provisions on wages and conditions of employment.

sider the impact of the two proposals on the employees' legitimate interests in bargaining wages and conditions of employment, and WERC's ruling also failed to weigh and evaluate the conflicting interests of the District and the Association. To determine whether the proposals are mandatory subjects of bargaining, the weight of the managerial interests of the public employer, together with any separate public political interest, must be balanced against the interests of the employees.

Since WERC did not apply the balancing test required by sec. 111.70.(1) (d) and by our cases, we conclude that we need not defer to WERC's ruling. The next question is whether we should remand the case to WERC for further action under a correct balancing test or whether we should apply the balancing test ourselves.[18] We have decided to apply the balancing test ourselves in this case, because this case requires us to look at what accommodation, if any, must be made between sec. 111.70(1) (d) and secs. 118.21 and 118.22 and requires us to examine our recent *Mack* case. This court rather than WERC has developed expertise and experience with secs. 118.21 and 118.22 and is better able to comment on the *Mack* case.

■

In applying the balancing test we consider the impact of the proposals on the District on the one hand and

WERC recognizes that the District is required to bargain over the effects of the layoff decision on the wages, hours and working conditions of the laid off employees and that "[s]uch bargaining would presumably include such topics as severance pay, unemployment compensation, seniority and reinstatement rights, among others." (Brief, p. 25.)

[18] Sec. 227.20(5), Stats. 1979–80, provides: "The court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law."

on the Association on the other. The District contends that since the two proposals reduce its flexibility to respond immediately to unanticipated, unforeseeable pressures requiring layoff, they are not mandatory subjects of bargaining. In contrast, the Association urges that since these proposals relate to the procedure for layoff and affect wages and conditions of employment, they are mandatory subjects of bargaining.

Obviously the proposals affect the District's ability to respond to the need to reduce staff positions immediately. The proposals set the specific dates for giving notice and for implementation of layoffs. WERC's conclusion that the proposals impinge on the District's dual role as policy maker and manager is reasonable. But WERC failed to evaluate the extent of the impingement. Without analysis WERC merely concluded that the proposals were an undue interference and an unwarranted restriction upon the District's power to lay off. We evaluate the extent to which the proposals affected the District's dual roles.

We first examine the impact of the proposals on the District as policy maker. A collective bargaining agreement is often viewed as resulting from a bilateral process, involving the public employer as manager and the employees' association. In contrast, a District's unilateral decision is viewed as resulting from a multilateral process in which concerned and interested groups and individuals, as well as the employees' association, have a say. Although WERC recognized that the public is concerned with the economic impact of retaining teachers and paying them wages until the implementation of layoff, WERC did not consider that the public is represented by the District in collective bargaining and that the public may participate in dealing with the economic issues relating to layoff in the budget process.

In analyzing the impact of the proposals on the District as manager, WERC failed to consider that under the proposals the District is constrained from implementing layoff for a relatively short period and that this time period parallels the time period set forth by the legislature in sec. 118.22 for nonrenewal of teachers' contracts. WERC did not consider what connection, if any, exists among secs. 111.70(1)(d), 118.21, and 118.22.

Secs. 118.21 and 118.22 provide that teachers are employed under one-year individual employment contracts. Sec. 118.22 requires the District to notify the teacher on or before March 15 of each year about the District's decision concerning the renewal or nonrenewal of the individual contract. If no notice is given, the individual contract is renewed for a year. The teacher must accept or reject the contract not later than April 15.[19] Thus even if the crystal ball is cloudy, by March

---

[19] Sec. 118.22(2)(3), Stats. 1979–80, provides:

"(2) On or before March 15 of the school year during which a teacher holds a contract, the board by which the teacher is employed or an employe at the direction of the board shall give the teacher written notice of renewal or refusal to renew his contract for the ensuing school year. If no such notice is given on or before March 15, the contract then in force shall continue for the ensuing school year. A teacher who receives a notice of renewal of contract for the ensuing school year, or a teacher who does not receive a notice of renewal or refusal to renew his contract for the ensuing school year on or before March 15, shall accept or reject in writing such contract not later than the following April 15. No teacher may be employed or dismissed except by a majority vote of the full membership of the board. Nothing in this section prevents the modification or termination of a contract by mutual agreement of the teacher and the board. No such board may enter into a contract of employment with a teacher for any period of time as to which the teacher is then under a contract of employment with another board.

"(3) At least 15 days prior to giving written notice of refusal to renew a teacher's contract for the ensuing school year, the

15, the District must decide what teachers it will need for the forthcoming school year and must notify the teachers whether their contracts will or will not be renewed. The District loses some of its flexibility in making staffing decisions, but it gains the certainty of having teachers under binding contracts for the forthcoming school year.

Secs. 118.21 and 118.22 reflect a legislative policy which has balanced the interests of the District and the teachers, and, regardless of whether the procedures set forth in sec. 118.22 govern layoff as well as nonrenewal, secs. 118.21 and 118.22 provide a background against which to apply the balancing test set forth in sec. 111.70(1)(d). In applying the balancing test to decide the bargaining nature of the proposals, we must harmonize the teacher's individual annual employment under secs. 118.21 and 118.22 with the provisions of sec. 111.70 (1)(d) relating to collective bargaining.

In its brief amicus curiae, the Wisconsin Association of School Boards asserts that the implications of a decision which holds the proposals in this case to be mandatory subjects of bargaining could be used to support a union's attempt to force bargaining over a very early notice date for layoff. For example, a union could attempt to force a district to bargain on a proposal for notice of layoff on November 1 with the effective date of layoff being at the end of that current school year. We are not persuaded by this argument. WERC and this court must look at the specific proposals in applying the balancing test, not at a hypothetical proposal. In this case, the specific proposals limit the District's

employing board shall inform the teacher by preliminary notice in writing that the board is considering nonrenewal of the teacher's contract and that, if the teacher files a request therefor with the board within 5 days after receiving the preliminary notice, the teacher has the right to a private conference with the board prior to being given written notice of refusal to renew his contract."

powers in implementing layoff only to the extent that the legislature in sec. 118.22 has already limited the District's powers with respect to nonrenewal of teachers' contracts. Obviously the legislature understood that the quality of a public education system depends on the quality and stability of the teaching staff. The legislature viewed the constraints of sec. 118.22 on the District's powers as harmonious with the public interest. The Association's proposals in this case limit the District's flexibility in reducing teaching staff, but the proposals do not significantly abridge the District's powers beyond the abridgement set forth in sec. 118.22.

While it is obvious that the specific proposals here have an impact on the District's powers, it is equally obvious that the proposals have a direct and immediate impact on the employees' legitimate interests in bargaining wages and job security (the latter falling into the category of conditions of employment). Although WERC did not consider the impact of the proposals on the employees' wages and conditions of employment, we do.

The notice and timing of a layoff has a direct impact on the wages and job security of those laid off. Indeed, a layoff may terminate wages and job security.

Teachers, in contrast to other municipal employees, have an acute interest in the timing of the notice of layoff and in the implementation of the layoff decision. As we have previously noted, sec. 118.22 establishes a system of individual annual teacher contracts and a comprehensive and orderly procedure for the annual renewal or nonrenewal of the contract. *Faust v. Ladysmith-Hawkins School Systems,* 88 Wis. 2d 525, 533, 277 N.W.2d 303 (1979).

The teachers, as well as the District, benefit from and are burdened by the legislatively established uniform statewide system of annual teacher contracts.

Sec. 118.22 provides a measure of certainty to the teachers. Yet the effect of sec. 118.22 is to limit the teachers' flexibility in seeking and obtaining employment after the contract renewal period. A teacher who is laid off after the statewide contract renewal period ends, and especially during the school year, may have difficulty obtaining fulltime teaching employment in Wisconsin. The proposals in question protect against such a possibility.

We must weigh and evaluate the impact of the proposals on the teachers' wages and conditions of employment against the impact of the proposals on the ability of the District to project its needs and to handle its economic and other problems. The court must evaluate the impact of the proposals on the well-being of the teacher, as opposed to its impact on the operation of the school system as a whole.

We recognize that the District has a strong managerial interest and a public policy interest in the general fiscal operation of the school system. Although limiting the District's powers, the two proposals are consistent with the legislative procedure set forth in sec. 118.22, which ensures an orderly system of retention and nonretention of teachers. Consequently, the impact of the Association's proposals on the District's already diminished authority to reduce teaching staff is not severe.

We recognize that the legislature has established an individual annual teacher contract and has prescribed a statewide and uniform system of renewal of contracts. Unless teachers are assured sufficient notice of layoff and a reasonable implementation date of layoff, they might not be afforded fair and adequate lead-time within which to make important career decisions. Thus the two proposals appear to have a greater impact on wages and conditions of employment than on the District's

interests. We therefore hold that the two proposals in question are "primarily related" to wages and conditions of employment and constitute a mandatory subject of collective bargaining.

Our conclusion about the bargaining nature of the proposals under sec. 111.70(1)(d) does not, however, end the opinion. WERC, the circuit court, and the court of appeals refer to a prior opinion of this court, *Mack v. Joint School District No. 3*, 92 Wis. 2d 476, 285 N.W.2d 604 (1979), in their respective opinions, and on review each party finds some support in *Mack* for its position concerning the bargaining nature of the proposals. Because of the extent of the parties' discussion of *Mack* and the diversity of interpretations given that decision, we conclude by considering what precedent, if any, *Mack* provides in the present case.

*Mack*, like this case, involves the relationship between teachers' collective bargaining agreements relating to layoff and sec. 118.22, Stats. 1979–80. This court has recognized that the scope of the municipal employer's duty to bargain under sec. 111.70, in light of other statutes governing the terms or conditions of employment, is one of the most difficult issues in public sector labor law. *Glendale Professional Policemen's Asso. v. City of Glendale*, 83 Wis. 2d 90, 105, 264 N.W.2d 594 (1978).

Our holding in *Mack* was narrow and limited: We held that the collective bargaining agreement negotiated in that case and dealing with notice of layoff was valid and binding on the parties to the agreement.

The District and WERC read *Mack* as saying that layoff and nonrenewal are separate and distinct terms and that, regardless of what the collective bargaining agreement says or does not say about layoff, sec. 118.22 does not govern the procedure to be used for layoff.

The District and WERC build on this reading of *Mack* to conclude that the proposals are nonmandatory subjects of bargaining, which the District may unilaterally decide.

The Association reads *Mack* as saying that in the absence of a collective bargaining agreement setting forth notice or implementation dates for layoff, the procedure set forth in sec. 118.22, Stats. 1979–80, for nonrenewal of teacher contracts must be followed for layoff.[20] The Association builds on this reading of *Mack* to conclude that the proposals are mandatory subjects of bargaining. The Association attempts to buttress its argument that its proposals are mandatory subjects of bargaining by asserting that the *Mack* decision characterized a notice of layoff proposal as a mandatory subject of collective bargaining. See *Mack, supra,* 92 Wis. 2d at 488. A close reading of the *Mack* opinion demonstrates, however, that the mandatory or nonmandatory bargaining nature of the notice of layoff provision was not a disputed issue in the case. Apparently the District in the *Mack* case viewed the proposal as a mandatory subject of bargaining.

The ambiguous language in *Mack* regarding the applicability of the procedures set forth in sec. 118.22 to layoff probably arose because the *Mack* court apparently concluded that it did not have to decide the applicability of sec. 118.22 to layoff. In *Mack* two teachers had been laid off in accordance with the provisions of their collective bargaining agreement but contrary to the provisions of sec. 118.22. They urged the court to

---

[20] The Association points out that in *Mack* the court said that "[w]ere it not for the provisions of the agreement, the Board would have been required to proceed under the 'refusal to renew' provisions of sec. 118.22, Stats. [1979–80], that relate to a permanent and final termination of employment." *Mack v. Joint School District No. 3,* 92 Wis. 2d 476, 488, 285 N.W.2d 604 (1979).

declare the layoffs invalid on the ground that the notice provision of the collective bargaining agreement could not supersede the notice provision in sec. 118.22.

The *Mack* court upheld the validity of the notice of layoff provision in the collective bargaining agreement, without expressly deciding whether the procedures set forth in sec. 118.22 for renewal and nonrenewal of contracts applied to layoff of teachers. The *Mack* court was able to conclude that, whether or not sec. 118.22 governed the procedure for layoff, the legislature intended a provision of a negotiated collective bargaining agreement on the subject of notice of layoff to be given effect.

We conclude that the *Mack* decision is not determinative of whether the procedures set forth in sec. 118.22 for renewal of contracts apply to layoff and is not determinative of the bargaining nature of the proposals in issue in this case. In this case, as in *Mack*, the court does not decide whether sec. 118.22, Stats. 1979–80, governs the procedure for layoff. We decide in this case only that the proposals were mandatory subjects of bargaining. Our holding that the proposals in question as presented in 1979 are mandatory subjects of bargaining under the balancing test comports with either of two interpretations of sec. 118.22: *i.e.,* that the procedures set forth in sec. 118.22 govern layoff or that the procedures set forth in sec. 118.22 do not govern layoff.

If the procedures in sec. 118.22 for renewal govern layoff and our choice is limited to mandatory and permissive, then the proposals must be viewed as mandatory. The proposals are mandatory because the legislative policy set forth in sec. 118.22 should be modified, waived or replaced only by agreement of both parties or by a statutorily authorized impasse procedure. The District should not be able to depart from the strictures

of sec. 118.22 by taking unilateral action which would be authorized if we held the proposals permissive subjects of bargaining.

As seen from our preceding discussion of the balancing test—a test applied when there is no issue of statutory conflict—the conclusion that the proposals are mandatory also comports with an interpretation that sec. 118.22 does not apply to layoff.

The court of appeals and the parties allude to sec. 118.22(4), Stats. 1981–82, which was adopted after the *Mack* case was decided and after the instant case arose. The new provision states that "[a] collective bargaining agreement may modify, waive or replace any of the provisions of [sec. 118.22] as they apply to teachers in the collective bargaining unit, but neither the employer nor the bargaining agent for the employes is required to bargain such modification, waiver or replacement." The court of appeals did not determine the effect of this new provision on the issue raised in this case, and neither do we. The decision is one best left to the legislature.

For the reasons set forth above, we conclude that the proposals in issue are mandatory subjects of bargaining.

*By the Court.*—Decision of the court of appeals affirmed.