# MADISON METROPOLITAN SCHOOL DISTRICT, Plaintiff-Respondent,

v.

# Wisconsin EMPLOYMENT RELATIONS COMMISSION, Defendant-Co-Appellant,

# MADISON TEACHERS INCORPORATED, Intervenor-Appellant.†

Court of Appeals

*No. 85–1493. Submitted on briefs September 4, 1986.—Decided September 25, 1986.*

(Also reported in 395 N.W.2d 825.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the intervenor-appellant, the cause was submitted on the briefs of *Robert C. Kelly* and *William Haus* and *Kelly, Haus and Katz*, of Madison.

For the defendant-co-appellant, the cause was submitted on the briefs of *Bronson C. La Follette*, attorney general, and *John D. Niemisto*, assistant attorney general.

For the plaintiff-respondent, the cause was submitted on the brief of *Mark F. Vetter* and *Warren Stringer, Jr.*, and *Davis & Kuelthau, S.C.*, of Milwaukee.

Brief of amicus curiae was filed by *Timothy E. Hawks* and *Kim Marie Wynn*, and *Schneidman, Myers, Dowling, Blumenfield & Albert*, of Milwaukee, on behalf of *Wisconsin Federation of Teachers*.

Brief of amicus curiae was filed by *Lee Cullen* and *Cullen, Weston & Pines* of Madison, on behalf of *Professional Police Association/Law Enforcement Employee Relations Division* and *District 1199 W/United Professionals for Quality Health Care.*

Brief of amicus curiae was filed by *Richard Perry* and *Barbara Zack Quindel* and *Perry, First, Reiher, Lerner & Quindel, S.C.,* of Milwaukee, on behalf of *Milwaukee Teachers' Education Association.*

Brief of amicus curiae was filed by *Michael J. Julka* and *Larry S. Meihsner* and *Isaksen, Lathrop, Esch, Hart & Clark,* of Madison, on behalf of *Wisconsin Association of School Boards, Inc.*

Brief of amicus curiae was filed by *Grant F. Langley*, city attorney, and *Stuart S. Mukamal,* of Milwaukee, on behalf of *City of Milwaukee* and of the *Milwaukee Board of School Directors.*

Brief of amicus curiae was filed by *Michael L. Stoll* of Madison, on behalf of *Wisconsin Education Association Council, Green Bay Education Association* and *Racine Education Association.*

Brief of amicus curiae was filed by *Richard V. Graylow* and *Lawton & Cates, S.C.* of Madison on behalf of *AFSCME International; District Councils 24, 40, 48; Firefighter Local Union No. 311* and *Madison Professional Police Officers Association (MPPOA).*

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J. The Wisconsin Employment Relations Commission and Madison Teachers Incorporated (MTI) appeal from an order reversing the commission's declaratory ruling that certain of MTI's contract proposals are mandatory subjects of bargaining under sec.

111.70(1)(a), Stats.[1] The commission concluded that the proposals, which would have named specific insurers in the sections of the agreement relating to employee health insurance, were "primarily relate[d] to wages, hours and conditions of employment" and thus, under the statute, were mandatory bargaining subjects. The sole issue is whether the commission erred in so concluding. We hold that it did not, and we therefore reverse.

The facts are undisputed and may be briefly stated. MTI is the bargaining representative for various employees of the Madison Metropolitan School District, including a unit of school aides and a unit of technical and clerical employees. Both units' contracts expired during negotiations for successor agreements. MTI submitted proposals for new contracts which, among other things, named specific health insurance carriers. The district took the position that the union's proposals involved permissive, rather than mandatory, subjects of bargaining and applied to the commission for a declaratory ruling to that effect. As indicated, the commission concluded that the proposals were mandatory bargaining subjects under sec. 111.70(1)(a), Stats.

---

[1] Our consideration of this appeal was greatly aided by the briefs (many of them combined or joint) of the following *amici curiae*: AFSCME International, District Councils 24, 40 and 48, Firefighter Local Union No. 311, City of Milwaukee, Green Bay Education Association, Madison Professional Police Officers Association, Milwaukee Board of School Directors, Milwaukee Teachers' Education Association, Racine Education Association, Wisconsin Association of School Boards, Inc./United Professionals for Quality Health Care District 1199W, Wisconsin Education Association Council, Wisconsin Federation of Teachers, and Wisconsin Professional Police Association/Law Enforcement Employee Relations Division.

On review, the circuit court reversed, holding that the proposals did not relate to wages, hours or conditions of employment, and that even if they did, the commission's decision cannot stand because, in attempting to balance the interests of the parties, it failed to consider the district's obligations to act for the commercial benefit of the community. We disagree with both conclusions.

Section 111.70(1)(a), Stats., declares that bargaining "with respect to wages, hours and conditions of employment" is mandatory. Matters "reserved to management and direction of the governmental unit," on the other hand, are permissive subjects of bargaining "except insofar as the manner of exercise of such functions affects the wages, hours and conditions of employment of the employes." The test is whether a matter is "primarily related" to wages, hours or conditions of employment, or whether it is primarily related to the formulation or management of public policy. *Unified S.D. No. 1 of Racine County v. WERC*, 81 Wis.2d 89, 102, 259 N.W.2d 724, 731–32 (1977). It is a case-by-case balancing test. The commission first considers whether the proposal may be said to relate to wages, hours or employment conditions; and, if it does, the commission must weigh the competing interests of the municipal employer, the employees and the public to determine whether the subject proposed for bargaining should be characterized as mandatory. *West Bend Education Ass'n v. WERC*, 121 Wis.2d 1, 9, 357 N.W.2d 534, 538 (1984).

The question is essentially one of law. *Id.* at 11, 357 N.W.2d at 539. As a general rule, we decide such questions independently, without deference to the adminis-

trative agency's decision. *American Motors Corp. v. ILHR Dept.*, 101 Wis.2d 337, 353–54, 305 N.W.2d 62, 70 (1981). There are circumstances, however, where courts should, and do, defer to the agency's legal conclusions. If its experience, technical competence and specialized knowledge aid the agency in interpreting and applying a statute, its conclusions are entitled to deference. *West Bend*, 121 Wis.2d at 12, 357 N.W.2d at 539. The same is true where the legal question is intertwined with factual determinations, or with value or policy determinations. *Id.* at 12, 357 N.W.2d at 539–40.

The bargainable nature of labor contract proposals has been recognized as a legal question so intertwined with facts, values and policy considerations that decisions of the commission, an agency with special experience and competence in the area, should be accorded "great weight." *Id.* at 13, 357 N.W.2d at 540.

> Consequently we should affirm WERC's conclusions regarding the bargaining nature of proposals if a rational basis exists for them or, to state the rule in another way, if the agency's view of the law is reasonable even though an alternative view is also reasonable. This court should not apply the balancing test *ab initio* to determine the mandatory bargaining nature of the proposals in issue [Footnote omitted.]*Id.* at 13–14, 357 N.W.2d at 540.[2]

---

[2] The district, arguing for *de novo* review, contends that we need not defer to the commission's decision, but only accord it "due weight" because the issue may be one of first impression, one with which the agency lacks experience. A similar argument was rejected in *School Dist. of Drummond v. WERC*, 121 Wis.2d 126, 133, 358 N.W.2d 285, 289 (1984):

The commission heard extensive evidence on the nature and characteristics of health insurance plans available to the district's employees. It found that the insurers interpret and administer their programs independently and that, as a result, each provides "unique benefit packages" to the employees, even in situations where the policy language may be identical. In ruling that the union's proposal to identify specific insurance carriers was related to wages, hours and conditions of employment, the commission stated:

> The evidence demonstrates that carriers utilize different procedures to generate the data upon which the "usual, customary and reasonable" payment level determinations are based, resulting in different payments for identical claims in at least some circumstances. Moreover, the record reveals that insurance policies typically limit certain benefits to medical procedures which are "medically necessary." The record establishes that the different decisionmakers for each carrier/administrator ultimately define the term "medically necessary" differently in at least some circumstances and thus the benefit levels related thereto are different from carrier to carrier. MTI's proposals herein thus seek to maintain what are unique benefit packages and hence the proposals have a direct relationship to employe wages.

The district alleges the commission has no experience on the subject of anti-nepotism rules and their effect on labor relations. Though this may be true, that allegation ignores the experience of the commission in determining subjects of mandatory or permissible bargaining which is the issue in this action. In any case where the commission is asked to determine whether a subject matter is mandatorily or permissibly bargainable, this court will apply the great weight—any rational basis standard to its "primary relation" conclusion.

The record demonstrates not only that the definition of key terms such as "usual, customary and reasonable" and "medically necessary" will vary from carrier [to carrier] but also, of course, that payment levels made by a given carrier as regards a given claim vary from one point in time to another. In our view that further supports our conclusion that the employes in the instant bargaining units have been shown to have substantial economic interests in the integrity, reliability and responsiveness of the carrier/administrator that is selected to be responsible for fair, accurate and prompt payment of employe health insurance claims. [Transcript references deleted.]

The record before the commission was lengthy and supports the above findings. There also was evidence that carriers' ability to respond to claims inquiries can vary. Some are able to respond immediately or within twenty-four hours, and others may take up to two weeks to do so. The insurers vary, too, in the manner in which employees are able to monitor the progress of their claims. Some carriers offer readily accessible assistance and information services to claimants, while others limit or deny direct access to claim personnel. There are differences, too, in the nature and cost of conversion plans upon termination of employment, in claim filing procedures, and in the procedures for obtaining review of denied claims. Finally, the policies differ in their definitions of key terms, such as who can qualify as an insured's "dependent" and thus be elibigle for coverage, or what surgical procedures may be excluded from coverage.

Considering the commission's explanation of its decision and the evidence underlying that decision, we

are satisfied that there is a rational basis for the conclusion that MTI's designation of specific insurers was a proposal primarily related to wages, hours and conditions of employment. We are equally satisfied that the commission properly balanced the competing interests of the district, the employees and the public.

The circuit court reviewed the commission's decision *ab initio* and undertook its own "balancing" analysis. Disagreeing with the commission's result, the court substituted its own. It concluded that the district's interest in paying the lowest possible premiums for its employees' health insurance was the overriding concern and reversed.

As we have said, the commission's determinations of bargainability are entitled to deference by the courts. We do not undertake our own balancing of competing interests and policies; we only determine whether the balance struck by the commission has a rational basis. *School Dist. of Drummond*, 121 Wis.2d at 138, 358 N.W.2d at 291. Even though a reviewing court might interpret or apply the statute differently to the same set of facts, the court must defer to the commission if a rational basis exists for its conclusion. *Id.* at 136, 358 N.W.2d at 290.

The district argues, however, that the commission's decision cannot stand because it never considered the district's "obligation to act for the commercial benefit of the municipality." We disagree.

The commission's decision contains a lengthy discussion of the district's "commercial benefit" argument. In part, the commission noted:

> The District argues that . . . it [has] . . . the responsibility and obligation to provide [the employee health] benefits in the most economic manner. To

accomplish that goal, the District asserts that it must have the unfettered right to shop the insurance marketplace .... The District contends that its ability to manage ... would be severely restricted if it had to negotiate the identity of the [carriers] .... The District further argues that it has the responsibility to provide for the welfare of the public ... [by controlling] the District's tax levy.

Responding to the argument, the commission noted that "the specific interest identified by the District" was the "need for freedom to shop the insurance marketplace ... in the least expensive manner" in order to meet its "statutory obligation ... to 'manage' and to provide for the 'welfare of the public' ... through [the] lowest possible tax levies." The commission also noted the district's "management interests" in securing a reliable and cooperative carrier and stated that the interests so identified "must be balanced against the proposals' relationships to wages." The commission discussed the latter relationship at some length and eventually concluded that, "[o]n balance, ... the proposals' relationships to wages predominate.[3]

The commission assessed the competing interests identified by the district and the union and proceeded to weigh them to determine whether the proposed subjects should be characterized as mandatory, and that is precisely what the law requires it to do. *School Dist. of Drummond*, 121 Wis.2d at 138, 358 N.W.2d at 291; *West*

---

[3] In so ruling, the commission noted that its conclusion that the proposal must be bargained does not foreclose the district from offering counterproposals on the subject which, in its view, might ameliorate its management concerns. We note, too, that the commission's decision, and our own, are based on the specific proposal made by the union in this case and on the record made before the agency.

*Bend*, 121 Wis.2d at 9, 357 N.W.2d at 538. In short, the commission applied appropriate legal standards to the dispute in arriving at its conclusion. Because that conclusion has a rational basis, we sustain it.

*By the Court.*—Order reversed.