AFSCME, LOCAL UNION NO. 360 & 3148, AFL-CIO, Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent.

Court of Appeals

*No. 88–1048. Submitted on briefs November 4, 1988.—Decided December 22, 1988.*

(Also reported in 434 N.W.2d 850.)

For the petitioner-appellant the cause was submitted on the briefs of *Richard V. Graylow* and *Lawton & Cates, S.C.,* of Madison.

For the respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *David C. Rice,* assistant attorney general.

There was a brief of *Robert M. Hesslink, Jr.,* and *Hesslink Law Offices, S.C.,* of Madison, on behalf of Sauk County.

Before Dykman, Eich. and Sundby, JJ.

EICH, J.  AFSCME, Local Union No. 360 and 3148, AFL-CIO appeals from an order affirming the decision of the Wisconsin Employment Relations Commission (WERC). The issue is whether the commission properly concluded that Sauk County did not commit a "prohibited labor practice" under the Municipal Employment Relations Act, sec. 111.70(3)(a), Stats.,[1] when

---

[1]Section 111.70(3)(a)4, Stats., is construed to mean that the employer has a "duty to bargain" mandatory subjects of collective bargaining. Fair-share and voluntary checkoff provisions are such mandatory subjects.

Section 111.70(3)(a)6, Stats., provides that it is a prohibited practice for Sauk County to "deduct labor organization dues from an employe's ... earnings, unless the ... employer has been presented with an individual order therefor, signed by the ... employe

it discontinued withholding labor union dues under "fair-share"[2] and voluntary checkoff provisions during a contract hiatus. We agree with the commission's conclusion and affirm the order.

The facts are not in dispute. Sauk County and the union had a collective bargaining agreement for 1983–84 which required the county to deduct union dues from all employees electing such a deduction ("checkoff" deductions), and to deduct equivalent "fair-share" amounts from all other employees.

The contract expired on December 31, 1984, without a successor contract in place for the following year. The expired contract did not contain any provisions extending the dues deduction provisions beyond its expiration. On January 14, 1985, the county notified the union that, in the absence of a current collective bargaining agreement, it would no longer continue the dues deductions. The union filed a complaint with WERC alleging that stopping the deductions would constitute a prohibited practice under the Act. The commission ruled against the union, and the circuit court affirmed.

While the interpretation of statutes is usually a question of law which courts will review *de novo,* where

personally, and terminable by at least the end of any year of its life or earlier by the ... employe giving at least 30 days' written notice of such termination to the ... employer and to the representative organization, except where there is a fair-share agreement in effect."

[2] "'Fair-share agreement' means an agreement between a municipal employer and a labor organization under which ... employes in the collective bargaining unit are required to pay their proportionate share of the cost of the collective bargaining process and contract administration measured by the amount of dues uniformly required of all members." Sec. 111.70(1)(f), Stats.

we undertake to review the decision of an administrative agency, we give deference to the agency's interpretation and application of the statutes it is charged to administer. This is especially true where the question involved, though one of law, is "intertwined with factual determinations or with value or policy determinations or where the agency's interpretation and application of the law is of long standing." *West Bend Education Ass'n v. WERC,* 121 Wis. 2d 1, 12, 357 N.W.2d 534, 539–40 (1984) (footnote omitted). In this case the question involved—whether the dues checkoff and fair-share provisions must be maintained by the employer during a contract hiatus—is one with which WERC has dealt in the past, and it is a subject within the area of the agency's special competence and expertise. As a result, we will give "great weight" to the commission's rulings and will affirm its conclusions if its view of the law is reasonable, even though an alternative view may be equally reasonable. *Id.* at 13–14, 357 N.W.2d at 540.

The commission's decision recognized that the statutory duty to bargain generally requires that the parties maintain the status quo with respect to mandatory subjects of bargaining during a contract hiatus, and that fair-share and dues checkoff provisions are mandatory subjects of bargaining. It ruled, however, that because such provisions, by their nature, benefit the union itself rather than the individual employees, they do not bear any direct relation to the employer-employee relationship and are thus distinguishable from other mandatory bargaining subjects. With respect to the fair-share contributions, the commission also noted the provisions of sec. 111.70(3)(a)6, Stats., which prohibit employers from making fair-share de-

ductions "except where there is a[n] … agreement in effect."

Taking the fair-share agreements first, we are satisfied that, other reasons aside, the statute controls. The commission ruled that no agreement was in effect at the time the county ceased making the deductions, and the union has not challenged that ruling. It is, therefore, the law of the case. And the statute is plain on its face: the county is barred from making the deductions where there is no agreement in effect. *See Berns v. Wisconsin Employment Relations Comm.,* 94 Wis. 2d 214, 223, 287 N.W.2d 829, 833 (Ct. App. 1979), *aff'd,* 99 Wis. 2d 252, 299 N.W.2d 248 (1980) ("fair-share agreements become effective, and continue in effect by their own terms according to the parties' agreements …").

As for the dues checkoff, the commission has ruled in several cases over the past decade that the Act does not require the employer to continue making dues checkoff (and fair-share) deductions during a contract hiatus. In *Gateway VTAE,* WERC Dec. No. 14142–A (1/77), the commission held that checkoffs were, in effect, "union security provisions," which benefit the union as a union, rather than the individual employees, and thus do not directly affect the employer-employee relationship. The commission distinguished such provisions from those affecting wages or fringe benefits, which inure to the benefit of the employees, and which, as mandatory subjects of bargaining, could not be abridged or halted during a contract hiatus (except under certain limited conditions not applicable here). In *County of Sauk,* WERC Dec. No. 17657–D (2/82), the commission applied the same rationale to fair-share deductions. In a second *Gateway* case, *Gateway VTAE,*

WERC Dec. No. 20209–A (7/83), the commission, holding that a fair-share deduction also ceases when a new union replaces a former bargaining representative, again characterized the agreement as "a union security provision rather than a substantive provision which runs to the benefit of bargaining, union employes ...." *Id.* at 7. And union security provisions have been held to be "wholly dependent" upon the existence of a valid collective bargaining agreement and thus the employer may unilaterally stop honoring them once the agreement has expired. *Industrial Union of Marine & Shipbuilding Wkrs. v. N.L.R.B.,* 320 F.2d 615, 619–20 (3rd Cir. 1963), *cert. denied,* 375 U.S. 984 (1964).

The union argues, however, that a more recent commission case, *City of Brookfield,* WERC Dec, No. 19822–C (11/84), compels the opposite result. We disagree. In that case the employer, during a hiatus period in which no collective bargaining agreement was in force, unilaterally changed the working hours for certain employees. The commission ruled that such action violated the requirement that the employer, after expiration of an agreement, maintain the status quo with respect to mandatory subjects of bargaining until a new agreement is concluded through negotiation or a mediation-arbitration award. Unlike the union, we see no fatal inconsistency between *Brookfield* and the earlier *Gateway* and *County of Sauk* cases. *Brookfield* involved contract provisions setting employees' working hours—provisions of utmost interest and benefit to employees. In the *Gateway* and *County of Sauk* cases, on the other hand, the commission, while recognizing that dues deductions are mandatory bargaining subjects, took care to distinguish the checkoff and fairshare terms as provisions benefiting the union as an organization rather than its members, and that, as a

397

result, they were not employee benefits but provisions relating to the security of the union itself.

The commission adopted that rationale in this case, and we cannot say it is an unreasonable interpretation of the law. The union disagrees, claiming that the decision represents a poor policy choice by the commission because it increases the "self-help powers" of the employer during contract hiatuses, and may lead to loss of funds to the union and diversion of its members' attention from other endeavors to dues collection and contract renegotiation during such periods.

We note first that "public policy questions concerning [the] scope and fairness [of legislation] are for the legislature rather than the courts." *Jaeger Baking Co. v. Kretschmann,* 96 Wis. 2d 590, 597, 292 N.W.2d 622, 625 (1980). And we believe the same is true with respect to policy choices and determinations made by agencies created by the legislature to administer statutory programs. Beyond that, we agree with the commission that the union's policy arguments simply fail to overcome the reasoning of the agency's decision in this case. As we noted at the outset, the deference we owe to decisions of the commission in the area of its expertise requires us to give "great weight" to those decisions, affirming them if they have a rational basis, even though an alternative view is also reasonable. *West Bend,* 121 Wis. 2d at 13–14, 357 N.W.2d at 540. The commission's ruling that the county's cessation of dues deductions during the contract hiatus was based on established agency precedent applying sec. 111.70(3), Stats., to similar fact situations, and we cannot say that it represents an unreasonable interpretation of the statute.

Finally, the union suggests that the commission's decision is flawed insofar as it relies on "private sector precedent" in a "public sector" case. The only private sector precedent to which we have referred is *Marine & Shipbuilding Wkrs., supra,* which we cited solely for its reference to fair-share agreements as union security provisions, rather than employee-benefit provisions—a view the commission itself has long held. And the union has not shown how or why the proposition should be disregarded simply because the case arose in the private rather than the public sector.

*By the Court.*—Order affirmed.