BROWN COUNTY,† Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS
COMMISSION, Respondent. [Case No.
86–0731.]

Lloyd BRAZEAU, Petitioner-Appellant,

v.

WISCONSIN COUNCIL, 40, AFSCME, AFL-CIO,
Toni Cagle, Bruce Chapman, Jean Elliott,
Darlene Fund, Mima Loberblatt-Teske, John
Nanney, Kathy Palmer, George Pronold, Steve
Rice, Julie Sowers, Doug Stangel, Nancy
Verrier & Mark Zimonick, Claimants-
Respondents,

WISCONSIN EMPLOYMENT RELATIONS
COMMISSION, Respondent. [Case No.
86–0732.]

Court of Appeals

*Nos. 86–0731, 86–0732. Submitted on briefs November 20,
1986.—Decided March 24, 1987.*

(Also reported in 405 N.W.2d 752.)

† Petition to review denied.

For the claimants-respondents, there was a brief by *Richard V. Graylow* of *Lawton & Cates, S.C.* of Madison.

For the respondent, there was a brief submitted by *Bronson C. La Follette,* attorney general, and *John D. Niemisto,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Brown County and Lloyd Brazeau (county)[1] appeal a circuit court judgment that affirmed the Wisconsin Employment Relations Commission's (commission) order modifying its examiner's findings of fact, conclusions of law, and order. The commission concluded that the county had committed a "prohibited practice," in violation of the Municipal Employment Relations Act (MERA)[2] by refusing to bargain with Local 40, AFSCME (union), concerning the employment of nonunion personnel in a youth home. The youth home had been run previously by the county, but its operation had been contracted out to a private corporation.

The circuit court affirmed the commission's determination. Additionally, the circuit court affirmed the commission's order requiring reinstatement and back pay for laid off county youth home employees as well as the cessation of the county's subcontract while the county fulfilled its bargaining obligation. The county challenges the commission's conclusions and remedial orders. Because the commission could rationally find that the county had engaged in a prohibited practice, and because the commission acted within its authority by imposing a remedy designed to return the parties to the pre-violation status quo pending further bargaining, we affirm the judgment.

Until July 15, 1983, the county operated a youth home, providing temporary shelter for neglected, abused, and runaway juveniles in rented space at the St. Norbert Abbey in DePere. The youth home had employed eight full-time and four part-time staff

[1]Because Brazeau's arguments coincide with the county's, we will generally refer to these parties as the "county."

[2]Chapter 111, subch. IV, Stats.

257

members to provide around-the-clock supervision for up to twenty-six residents. On July 15, the county's lease with St. Norbert expired and a private corporation, organized by Lloyd Brazeau, the county's former youth home director, began providing shelter for up to twelve residents in a converted private home on Mason Street in Green Bay.

From 1980 through early 1983, the county had explored modifying its role as a provider of juvenile shelter. Various boards and committees debated different approaches in light of changing regulatory and funding climates. Prompted in part by St. Norbert's refusal to renew the youth home lease, the county accepted a proposal by Brazeau to operate a youth home with a smaller staff, lower resident capacity, different location, and a lower yearly cost to the county. Brazeau's proposal included "[a] program emphasizing the same consistency and structure that presently exist [at the youth home]."

On May 13, 1983, the union, representing the county's youth home employees, notified the county that any decision to subcontract youth home services would be considered a mandatory bargaining subject. On May 18, the county and the union began to negotiate. The union proposed to permit the contracting out of youth home services only if current employees were not affected. The county characterized its subcontracting decision as a permissive bargaining subject and, consequently, refused to negotiate the issue.

The county subsequently voted to contract with Brazeau's corporation, Shelter Care of Brown County, Inc. (SCBC), to provide the proposed youth home services. Rather than hiring bargaining unit employees whose positions remained open, Brazeau invited

each employee to submit employment applications. One part-time employee submitted an application and was hired on a part-time basis. The county laid off the remaining youth home employees, effective July 14, 1983.

On June 28, 1983, the union filed a complaint of prohibited practices against the county and Brazeau for unilaterally subcontracting youth home services. The complaint alleged, among other things, that the county's decision was a refusal to bargain and that the county and Brazeau had interfered with employee rights under MERA. On March 22, 1984, a commission examiner found that the county had unlawfully refused to bargain in violation of sec. 111.70(3)(a)4, Stats., and that as a result, it had unlawfully interfered with employee rights in violation of sec. 111.70(3)(a)1, Stats. The examiner dismissed the allegations against Brazeau.[3]

The examiner found that the county's contract with Brazeau encompassed three distinct decisions: to reduce the youth home's capacity, to relocate the youth home, and to subcontract its operation. The examiner found that the decisions to change the shelter's capacity and location related primarily to public policy and were thus permissive bargaining subjects. However, because the examiner found that the decision to subcontract related primarily to hours, wages, and conditions of employment, he concluded that this aspect of the county's plan was a mandatory bargaining subject.

---

[3]Although the allegations of prohibited practices against Brazeau were dismissed, he appeals the commission's orders because of their effect on his corporation's contract to provide the county with youth home services.

The examiner made two subsequent orders. First, he ordered the county to cease implementing the subcontract until it had fulfilled its duty to bargain. Second, the examiner ordered the county to reinstate, with back pay, the youth home employees who had been laid off because of the subcontracting decision. The order did not extend to those employees laid off as a result of the county's reduction in the shelter's capacity.

On July 3, 1985, the commission issued its review of the examiner's determinations. Although endorsing most of the findings, the commission declined to view the county's decision in three distinct parts. Instead, it reasoned that the decision to move the youth home to the smaller Mason Street site arose not so much from the long-term planning the county had undertaken, but from the pressures created by the lease termination and the limited availability of other sites. The commission agreed with the county that the decision was an "interim solution to a set of broader and longer range problems." Accordingly, it viewed the county's decision to subcontract its youth home services to Brazeau as a single act, not divisible into separate management and labor components. Because the county could have implemented this interim solution by employing bargaining unit personnel at the Mason Street site, the commission saw the county's integral decision as relating primarily to wages, hours, or conditions of employment.

The commission affirmed the examiner's orders requiring reinstatement, back pay, and mandatory bargaining. In addition, the commission stated that by requiring the county to cease subcontracting with SCBC, it did not require, as the county argued, that the county abandon the Mason Street site and recre-

ate the old youth home operation. It also noted that the displacement of nonunion SCBC employees was a result of the county's prohibited practices, not a direct result of the commission's effort to make the affected union employees whole through reinstatement.

The county appealed the commission's decision. The circuit court denied the county's request to introduce additional evidence in the form of the collective bargaining agreement between the union and the county. The circuit court's subsequent affirmance of the commission's decision gives rise to this appeal.

Initially, the parties differ on the standard we must apply in reviewing the commission's decision. The county depicts the facts of this mandatory bargaining question as novel. It argues that because of the commission's limited experience in like situations, we should apply MERA to the facts without deference to the commission. *See Unified School Dist. No. 1 of Racine County v. WERC,* 81 Wis. 2d 89, 93, 259 N.W.2d 724, 727 (1977). We disagree.

Seven years after the *Racine* decision, our supreme court recognized that although facts differ from case to case, it is the commission's general experience in determining subjects of mandatory bargaining that commands great deference. *School District of Drummond v. WERC,* 121 Wis. 2d 126, 133, 358 N.W.2d 285, 289 (1984). When the legislature empowers an agency to apply and enforce a statute, as it has with the commission and MERA, the agency's interpretation of the statute is entitled to great weight and any rational basis will sustain its interpretation. *Id.* at 132–33, 358 N.W.2d at 288. "In any case where the commission is asked to determine whether a subject matter is

mandatorily or permissibly bargainable, this court will apply the great weight—any rational basis standard to its 'primary relation' conclusion." *Id.* at 133, 358 N.W.2d at 289. We therefore must uphold the commission's conclusion if any rational basis supports it regardless of whether other rational interpretations exist. *See id.* at 135–36, 358 N.W.2d at 290.

Whether the county's decision requires mandatory bargaining turns on whether its decision relates primarily to wages, hours, or conditions of employment or whether it relates to management of the youth home or formulation of public policy. *See id.* at 135, 358 N.W.2d at 290. Section 111.70(1)(a), Stats., requires municipal employers to bargain with respect to "wages, hours and conditions of employment." That statute balances this requirement with the command that a municipal employer "shall not be required to bargain on subjects reserved to management and direction of the governmental unit ...."

The courts have recognized that conflicts between these statutorily protected interests arise when a municipality's decisions embrace both managerial and labor concerns. *West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 8, 357 N.W.2d 534, 538 (1984). To resolve these conflicts, our supreme court has interpreted MERA as setting forth a "primarily related" standard. *Id.* This test, applied on a case-by-case basis, balances the significant interests of the municipal employer, its employees, and the public. *Id.* at 9, 357 N.W.2d at 538. If the employees' legitimate interest in wages, hours, or conditions of employment outweighs the employer's concerns about the restriction on managerial prerogatives or public policy, the proposal is a mandatory subject of bargaining. *Id.* In contrast,

where the governmental unit's management and direction or formulation of public policy predominates, the matter is not a mandatory subject of collective bargaining. *Id.*

■

A rational basis supports the commission's conclusion that the county's decision to subcontract its youth home services related primarily to wages, hours, or conditions of employment. The commission recognized that the county had been debating a change in direction for its youth home services. It further recognized the policy nature of the county's general plan to condense and relocate the facility. The commission also noted, however, that the county's move to the Mason Street site came in large measure as a result of its lease termination. Moreover, even when it decided to move the youth home to a smaller location, the county still had a choice of employing its own personnel or employing personnel hired by Brazeau. Because the county chose to allow the subcontractor to provide a nonbargaining unit staff for the new youth home, and because the new youth home's operation required essentially similar staff skills, the commission had a rational basis for concluding that the county's decision primarily affected the county employees' wages, hours, or conditions of employment.

The county next challenges the commission's remedial orders requiring reinstatement and back pay for the bargaining unit employees that would have retained their jobs had the county staffed the new youth home. The county contends that a simple bargaining order would be sufficient to advance the purposes of MERA. We conclude, however, that the commission acted within its authority and that its orders must be upheld.

It is our obligation to defer to the commission in its selection of a remedial order. *WERC v. City of Evansville,* 69 Wis. 2d 140, 166, 230 N.W.2d 688, 703 (1975). Where it cannot be said that the commission's order is a patent attempt to achieve ends other than those contemplated by MERA, and the order is otherwise within the commission's legal authority and the findings supporting it rely on sufficient evidence, the order will not be set aside by the reviewing court. *Id.* at 166–67, 230 N.W.2d at 703. Here, the commission's order satisfies the three requirements enumerated by our supreme court in *Evansville.*

First, the order is an attempt to achieve ends contemplated by MERA. The commission explained its remedial orders as necessary to restore the parties to the conditions preceding the county's violation and to make whole the employees affected by the prohibited conduct. MERA contemplates fairness in bargaining[4] and empowers the commission to remedy wrongs resulting from prohibited practices. By returning the parties as nearly as possible to their pre-violation positions, the commission's orders support MERA. A less comprehensive remedy, such as a simple bargaining order, would require the union to bargain from a disadvantageous position: to bargain on behalf of wrongfully laid off employees who remain uncompensated throughout an indefinite period of negotiation. The county has not shown that the commission's orders are outside the ends contemplated by MERA. Our supreme court has upheld similar remedies. *See, e.g., Racine,* 81 Wis. 2d at 104–05, 259 N.W.2d at 732–33.

---

[4] *See* sec. 111.70(6), Stats.

Second, the commission's order is clearly within its legal authority. Section 111.07(4), Stats.,[5] empowers the commission to "take such affirmative action, including reinstatement of employes with or without pay, as the commission deems proper." This language clearly authorizes the commission's remedies. We see no basis for an argument that the commission acted outside its authority.

Finally, our earlier affirmance of the commission's findings satisfies the last prong of the *Evansville* test: The findings are supported by sufficient evidence. Accordingly, we affirm the commission's orders.

The county also argues that the circuit court erred by denying its motion to remand this case to the commission for consideration of additional evidence. We disagree.

The county contends that the court wrongly relied on sec. 227.19(1), Stats. (1983),[6] to deny its motion to introduce additional evidence of the collective bargaining agreement. That statute empowers a court, in its discretion, to allow introduction of additional material evidence only if a party applies for leave to do so before the trial date is set. The county contends that the court should have instead been guided by sec. 111.07(7), Stats. This subsection does not require an application to the court before the trial date is set. It

---

[5]Section 111.70(4)(a), Stats., provides:

(a) *Prevention of prohibited practices.* Section 111.07 shall govern procedure in all cases involving prohibited practices under this subchapter except that wherever the term "unfair labor practices" appears in s. 111.07 the term "prohibited practices" shall be substituted.

[6]Now sec. 227.56(1), Stats.

provides that the court may, in its discretion, grant leave to adduce additional evidence where such evidence appears to be material and reasonable cause is shown for failure to have adduced such evidence in the hearing before the commission.

We need not decide which of the two provisions should have guided the court because both require materiality of the proposed evidence. The collective bargaining agreement clause the county wished to adduce specifically reserved to management "the right to relieve employees from duty because of lack of work or other legitimate reasons." Although the parties had not agreed to this management rights clause until more than a year after the commission's decision, it remains immaterial to the issues before us.

This management rights clause simply restates the same management prerogatives guaranteed by MERA. Neither we nor the commission have questioned the county's long term policy decision to condense the youth home. The commission ordered reinstatement only for those bargaining unit employees who would not have been laid off had the county, rather than Brazeau, staffed the Mason Street youth home. The county's contention that such a clause empowers it to replace public employees without bargaining, however, is meritless. The county's unquestioned right to lay off employees for "legitimate reasons" does not give it the right to avoid mandatory bargaining over a decision to replace public employees, especially where that decision relates primarily to wages, hours, or conditions of employment. Accordingly, the existence of a management rights clause is immaterial, and the circuit court committed no error by refusing to allow it into the record.

Also, the county argues for the first time on appeal that the commission's order requiring reinstatement of wrongfully laid off bargaining unit employees unconstitutionally impairs the county's contract with SCBC. Our review of administrative decisions is well defined. We are confined to the record before us and will not consider an issue not raised before the circuit court. *See Hiegel v. LIRC,* 121 Wis. 2d 205, 211–12, 359 N.W.2d 405, 408–09 (Ct. App. 1984); sec. 227.57(1), Stats.

*By the Court.*—Judgment affirmed.