Todd E. LANGE, Plaintiff-Appellant,

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Ideal Door
Company and Fireman's Fund Insurance Company,
Defendants-Respondents. †

Court of Appeals

*No. 97–0865. Submitted on briefs October 8, 1997.—Decided
December 9, 1997.*

(Also reported in 573 N.W.2d 856.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Julie C. Dawson* of *Wagner & Todryk, S.C.*, Menomonie.

On behalf of the defendant-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Monica Burkert-Brist* and *Karen E. Timberlake*, assistant attorneys general.

Before Cane, P.J., Myse and Hoover, JJ.

MYSE, J.   Todd Lange appeals an order of the circuit court affirming a decision of the Labor and Industry Review Commission (LIRC). In its decision, LIRC barred Lange from further recovery of worker's compensation benefits after he incurred a non-work-related accident subsequent to a compensable work-related accident, and rejected his claim for loss of earnings capacity benefits. Lange contends that LIRC erred[1] by barring worker's compensation because its determination that his work-related injury was not a substantial factor in his non-work-related injury is not

---

[1] On appeal, we review LIRC's decision and not the trial court's. *See DILHR v. LIRC*, 161 Wis. 2d 231, 241, 467 N.W.2d 545, 548 (1991).

564

supported by substantial and credible evidence, and because its determination that his conduct prior to the re-injury constituted an intervening cause lacked a reasonable basis. Because we agree with both of Lange's contentions, we reverse LIRC's decision and remand. We do not review Lange's argument regarding lost earning capacity benefits, however, because Lange raises this issue for the first time on appeal.

The facts material to this appeal are largely undisputed. Lange sustained a compensable work-related injury to his back while employed for Ideal Door. An MRI (magnetic resonance imaging) revealed that Lange had degenerative disc disease at L4–5 with a small focal disc herniation and nerve impingement.

Over one year later Lange slipped and fell while walking on some ice at a friend's house, causing the previously herniated disc to protrude and fragment. Lange was hospitalized after this slip and fall, and told his doctors that he had been drinking beer before he slipped.[2]

Lange continued working for Ideal Door after this slip and fall, was laid off, and then offered a new position at the end of his worker's compensation hearing. LIRC denied worker's compensation benefits to Lange and rejected his claim for loss of earnings capacity benefits. Lange appeals from the circuit court decision affirming LIRC's determination.

In addressing the issue of whether Lange's non-work-related re-injury was compensable, LIRC determined that the appropriate legal standard was whether "the work injury [was] a 'substantial factor' in the off-duty injury." LIRC concluded that the injury

---

[2] While Lange disputed both at the hearing and on appeal that he drank beer before falling, our resolution of other issues makes it unnecessary for us to resolve this issue.

sustained by the slip and fall was independent of and would have occurred without regard to the first injury, and was therefore not compensable. In support of its finding, LIRC relied on the number of new symptoms occurring after the re-injury, medical reports that showed Lange's back condition was stable or improving just prior to the fall, and the medical report of Dr. David Ketroser, whom LIRC viewed as the most credible doctor. LIRC quoted the following portion of Dr. Ketroser's report for support:

> [IMPRESSION: . . . It is my impression, therefore, that this patient had a mild right L4–5 disc herniation to the right] which was significantly worsened by the fall described on January 31, 1992, such that he currently has a free fragment disc herniation at that level, with more significant nerve root compression at L5 and S1.
>
> . . . .
>
> [CAUSE:] By history, the cause of this patient's initial right L4–5 disc herniation with right L5 nerve root impingement was the incident described at work on December 12, 1990. The clinically significant worsening of this condition, which led to additional treatment and testing, was the fall on January 31, 1992. (Bracketed material is from the original report of Ketroser but was omitted in LIR C's quote, it is added for clarity.)

A factual finding of the commission is conclusive as long as it is supported by credible and substantial evidence. Section 102.23(6), STATS.; *Brakebush Bros. v. LIRC*, 210 Wis. 2d 624, 630–31, 563 N.W.2d 512, 515 (1997). This is so even if we believe that the weight of the evidence supports a contrary finding. *Hagen v. LIRC*, 210 Wis. 2d 12, 20, 563 N.W.2d 454, 459

(1997). We are also to consider conclusive any finding of the commission that is based upon a reasonable inference from the evidence. *Kraynick v. Industrial Comm'n*, 34 Wis. 2d 107, 111, 148 N.W.2d 668, 670 (1967).

Determining whether an injury is a proximate result of a compensable injury under the worker's compensation laws is a question of fact for the commission. *Harnischfeger Corp. v. Industrial Comm'n*, 253 Wis. 613, 615–16, 34 N.W.2d 678, 679 (1948). Additionally, the weight and credibility to be accorded to both witnesses and medical evidence are functions left to the commission. *Brakebush*, 210 Wis. 2d at 631, 563 N.W.2d at 515.

A commission's legal conclusions are accorded varying levels of deference, depending largely on the level of experience the commission has in interpreting the statute. *See Jicha v. DILHR*, 169 Wis. 2d 284, 290–91, 485 N.W.2d 256, 258–59 (1992). LIRC argues that its over seventy-year history in interpreting the worker's compensation statutes should entitle its legal conclusions to great weight. Lange does not dispute this; therefore, for purposes of this appeal we will afford LIRC's legal conclusions great weight. They will therefore be upheld as long as they are supported by a reasonable basis. *UFE v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 62–63 (1996).

In its decision, LIRC did not discuss in great detail the extent to which the work-related and non-work-related injuries must be connected before the first injury can be considered to be a substantial factor in the second injury. LIRC did note that a re-injury is compensable if it is caused by the weakened condition

of a worker, *Western Lime & Cement Co. v. Boll*, 194 Wis. 606, 608–09, 217 N.W. 303, 304 (1928), or if the work-related injury made the worker more vulnerable to re-injury, *Burton v. DILHR*, 43 Wis. 2d 218, 228–28a, 168 N.W.2d 196, 200–01 (1969). LIRC also specifically concluded that Lange's second injury "alone was responsible for the dramatic change," thereby implying that if the first injury was related to the results caused by the second injury, the injury would be compensable.

We agree with this implicit conclusion. A work-related injury that plays any part in a second, non-work-related injury is properly considered a substantial factor in the re-injury. It will not be a substantial factor, however, where the second injury alone would have caused the damages. For LIRC to conclude that a work-related injury is not a substantial factor in a second, related injury, it must find that the claimant would have suffered the same injury, to the same extent, despite the existence of the work-related injury. In all other cases where the two injuries are related, however, the re-injury will be compensable.

We conclude that LIRC's factual finding that the slip and fall alone was responsible for the worsening of Lange's back condition is not supported by substantial and credible evidence. By definition an *aggravation* of a pre-existing condition links the two injuries. Lange's work-related injury was a disc herniation at L4-L5, and all the evidence demonstrates that this back condition was made worse by his second fall so as to create a further herniation.

No doctor expressed the opinion that this second injury would have occurred without regard to the work-related injury. On the contrary, every doctor suggested

that the extruded disc was related to the injuries sustained as a result of the work-related accident. Dr. Richard Galbraith concluded that the January 1992 fall was "a secondary aggravation of the pre-existing condition," and that the original injury predestined Lange to have further problems with his back. Dr. Douglas Jacot, Lange's treating chiropractor, testified that Lange would not have sustained the later injury in the absence of the first injury. Dr. Thomas Rieser concluded that Lange's injury "was significantly aggravated" after the January 1992 fall. Dr. William Ganz stated that Lange's disc herniation had "significantly deteriorated" as a result of the re-injury.

The commission found the report of Dr. Ketroser, however, to be more credible than the reports of the other doctors, and relied on his report to support its findings. We acknowledge that the commission has the right to determine which of the various witnesses is most credible, *Brakebush*, 210 Wis. 2d at 631, 563 N.W.2d at 515, even where such an opinion is contrary to the great weight of the evidence, *Hagen*, 210 Wis. 2d at 20, 563 N.W.2d at 459. Dr. Ketroser's report, however, does not support the commission's finding that the second injury would have occurred to the same extent and in the same manner without regard to the initial injury. There is nothing in his report to indicate this fact. Rather, Dr. Ketroser continually refers to the second injury as a "worsening" of the initial injury. The only meaning that can be attached to these words is that the second injury aggravated the prior work-related injury.

The facts involved in the slip and fall also do not permit LIRC to reasonably infer that Lange would have suffered the same injury, to the same extent, in the absence of the initial injury. Lange was an

otherwise healthy man in his twenties who merely slipped and fell while walking on ice. These circumstances are not so dramatic as to permit the necessary inference.

The dissent suggests that the fact that Lange's symptoms became significantly worse after the slip and fall is sufficient to permit LIRC to infer that Lange's re-injury is unrelated to his initial injury. We disagree. New symptoms arising from a re-injury, standing alone, do not suggest whether a relationship exists between the two injuries. If an earlier accident renders a worker's back more vulnerable to re-injury, a second injury in the same location almost certainly will cause new symptoms. We therefore reject that new symptoms alone can permit such an inference, and conclude that there is no evidence to support LIRC's finding that Lange's second injury was independent and unrelated to his work-related injury.

LIRC also supported its denial of benefits to Lange on an intervening cause theory. Under this analysis, compensation for a non-work-related re-injury of which a work-related injury was a substantial cause may be denied where the claimant voluntarily engages in conduct that the claimant should know would place him or her at a greater risk of re-injury. *See Kill v. Industrial Comm'n,* 160 Wis. 549, 552–53, 152 N.W. 148, 149 (1915) (by engaging in boxing match nine days after cutting wrist at work, claimant's decision to fight constituted an intervening cause which prevented further compensation). LIRC determined that Lange should have known that drinking beer and walking on the ice created a foreseeable risk of re-injury, and that this conduct therefore constituted an intervening cause.

Where, as here, the facts material to an appeal are undisputed, the application of those facts to the appropriate legal standards involves a question of law. *First Nat'l Leasing Corp. v. Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). Normally, our next step would be to determine what level of deference is owed to the commission's legal conclusions: great weight, due weight, or no weight. *See Jicha*, 169 Wis. 2d at 290–91, 485 N.W.2d at 258–59. As we have already noted, however, the parties do not dispute that this court should apply the great weight standard, and we do so accordingly.

We conclude that LIRC's determination that Lange placed himself in a position where re-injury was foreseeable lacks a reasonable basis and is therefore erroneous. *See UFE*, 201 Wis. 2d at 274, 548 N.W.2d at 62–63. Walking on ice is a virtual necessity for Wisconsin residents in January, and as long as it is done with due care there is no foreseeable risk of injury. There is no evidence to suggest that Lange did not demonstrate due care. While Lange may have been drinking beer before he walked and fell on the ice, the record is devoid of any indication that Lange's drinking had any influence on him or otherwise contributed to his fall. In the absence of such evidence, LIRC's conclusion that Lange's beer consumption was related to his fall is rank speculation. The total lack of any evidence suggesting a relationship between the consumption of some beer and the fall precludes LIRC's determination that this injury was caused by an intervening cause.

Lange's final challenge involves LIRC's decision to deny him benefits for lost earning capacity. Lange

571

claims that LIRC erred by not specifically finding that he refused Ideal Door's job offer without reasonable cause, *see* § 102.44(6)(g), STATS., and further claims there is insufficient evidence in the record to support such a finding. While Lange is technically correct, we note that the reason for the absence of such a finding and any evidence on the issue is that Lange did not raise this issue before LIRC.

■

The court of appeals is an error-correcting court, and does not engage in fact-finding. *See Milwaukee Journal v. Call*, 153 Wis. 2d 313, 319, 450 N.W.2d 515, 517 (Ct. App. 1989). On review to the commission and the circuit court, Lange's strategy involved an attack on the good-faith nature of the job offer. That position failed. Now Lange is trying to change his strategy to raise a claim that was not put before LIRC or the circuit court. We will not address an issue raised for the first time on appeal. *Brown County v. WERC*, 138 Wis. 2d 254, 267, 405 N.W.2d 752, 757 (Ct. App. 1987).

We conclude that LIRC erred by denying Lange benefits because its determination that his work-related injury was not a substantial factor in his re-injury is not supported by substantial and credible evidence, and because its determination that his conduct prior to the re-injury constituted an intervening cause is not supported by any evidence and therefore lacks a reasonable basis. We further conclude that Lange's appeal from that part of LIRC's order denying benefits for lost earning capacity is waived. We therefore reverse the commission and remand this matter to LIRC.

*By the Court.*—Order reversed and cause remanded.

CANE, P.J. *(dissenting)*. I respectfully dissent from the majority's conclusion that LIRC's factual finding is not supported by the evidence. The evidence is disputed as to whether the dramatic change in Lange's spine from the slip and fall was caused by a weakened condition from the earlier work-related injury. I would conclude that there is sufficient evidence from which LIRC could reasonably infer that the slip and fall alone was responsible for the dramatic change in Lange's spine.

There is no contention that LIRC used an improper standard under the holdings in *Western Lime & Cement Co. v. Boll*, 194 Wis. 606, 608–09, 217 N.W. 303, 304 (1928), and *Burton v. DILHR*, 43 Wis. 2d 218, 228–28a, 168 N.W.2d 196, 201 (1969). Essentially, these cases hold that a person's subsequent non-work injury may be compensable under worker's compensation if it is caused by the weakened condition of the worker from the earlier work-related injury. Said in another way, the earlier work-related injury must have made the worker more vulnerable to re-injury.

Professor Arthur Larson helps us understand this area of the law where he states that an off-duty injury is compensable when the "episode is some nonemployment exertion like raising a window or hanging up a suit, so long as it is clear that the real operative factor is the progression of the compensable injury." 1 ARTHUR LARSON, WORKER'S COMPENSATION § 13.11(a) (1997). Neal and Danas describe it another way by saying that if medical proof establishes that the residual effects of a compensable injury cause a subsequent off-the-job re-injury, the employer is liable for the subsequent reinjury. JOHN D. NEAL & JOSEPH DANAS, JR., WORKER'S COMPENSATION HANDBOOK § 3.37 (4th ed. 1997). Therefore, LIRC's duty in this case was

573

to examine whether Lange's earlier work injury was a substantial factor in his later injury from the slip and fall. LIRC concluded it was not, and I agree there is sufficient evidence for it to reasonably reach this conclusion.

We review a commission's factual findings with great deference. *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169, 173 (1983). In fact, the factual findings are conclusive so long as they are supported by credible and substantial evidence. *Brakebush Bros. v. LIRC*, 210 Wis. 2d 624, 630–31, 563 N.W.2d 512, 515 (1997); § 102.23(6), STATS. This is so even if we believe that the weight of the evidence supports a contrary determination. *Hagen v. LIRC*, 210 Wis. 2d 12, 24, 563 N.W.2d 454, 459 (1997). We are also to consider conclusive any finding of the commission that is based upon a reasonable inference from the evidence. *Kraynick v. Industrial Comm'n*, 34 Wis. 2d 107, 111, 148 N.W.2d 668, 670 (1967).

Whether an injury is a proximate result of a compensable injury under the worker's compensation laws is a question of fact for the commission. *Harnischfeger Corp. v. Industrial Comm'n*, 253 Wis. 613, 615–16, 34 N.W.2d 678, 679 (1948). Additionally, the weight and credibility to be accorded to both witnesses and medical evidence are functions left to the commission. *Brakebush*, 210 Wis. 2d at 631, 563 N.W.2d at 515.

Here, LIRC accepted Dr. David Ketroser's report as most credible. Based primarily on his report, LIRC noted that prior to the slip and fall, Lange's back was relatively stable, if not improving. His back symptoms were decreasing and lifting restrictions had been loosened. After the slip and fall, Lange experienced a number of new symptoms, including foot drop and

radiation of pain to the right leg. This was a dramatic change from Lange's prior condition.

LIRC inferred from Lange's prior condition, and then the subsequent dramatic change after the slip and fall, that the second accident alone was responsible for Lange's present injury. Unlike the worker in *Burton* who reinjured himself after a sneezing attack because of his weakened condition from the work injury, LIRC concluded that Lange's present injury was not a result of the progression of the initial work injury. This is a reasonable factual inference from the evidence, and we should not disturb this factual finding, even if we may not agree with its conclusion. Although one could certainly argue that the second injury only occurred because the original injury weakened Lange, LIRC is entitled to reject this inference.

The majority reasons that an aggravation of a preexisting injury, by definition, links the two injuries. I disagree. Under the rationale of *Western Lime* and *Burton*, the second injury is compensable only if it is caused by the weakened condition from the work injury or where the work-related injury made the worker more vulnerable to reinjury. If a worker has a bad back from a work-related injury and then seriously injures himself in a later non-work-related injury, the fact that the work injury is aggravated does not mean the work injury was a cause of the subsequent non-work injury or the result of a weakened condition. Nor does the fact that the work injury is "significantly worsened" mean that there is a causal relationship. It simply means what the doctor said. His spine condition is now significantly worse; it does not necessarily follow that it is a progression of the work injury. This was the issue faced by LIRC, which concluded that Lange's injury from the slip and fall was so dramatic a change from his

prior condition that the injuries were unrelated. It is a reasonable inference, and it is not our role to change this factual finding. Because of my above rationale, I would not address LIRC's finding that Lange's act of drinking and then walking on ice acted as an intervening cause.