**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 12, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP581**

STATE OF WISCONSIN

Cir. Ct. No.  **2016ME800**

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE COMMITMENT OF D.C.B.:

MILWAUKEE COUNTY,

  PETITIONER-RESPONDENT,

  V.

D.C.B.,

  RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: HANNAH C. DUGAN, Judge. *Reversed.*

¶1     BRASH, C.J.[1]   D.C.B. appeals an order of the trial court extending his involuntary civil commitment, pursuant to WIS. STAT. ch. 51, by twelve

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

months. D.C.B. argues that Milwaukee County failed to provide sufficient evidence to prove D.C.B.'s dangerousness as required under WIS. STAT. § 51.20(1).

¶2 Although not discussed by either party, we reviewed the requirement for recommitment hearings set forth by our supreme court in *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277; specifically, that the trial court must "make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶3. *D.J.W.* was released on April 24, 2020—more than four months before the recommitment hearing in this case was held on August 28, 2020. Thus, its requirement is applicable in this case.

¶3 Upon our review of the record, we conclude that the trial court did not comply with that requirement. Furthermore, the trial court has lost competency to conduct further proceedings on this matter, rendering the remand of this matter for additional fact finding an inappropriate remedy. We therefore conclude that we must outright reverse the recommitment order for D.C.B.

#### BACKGROUND

¶4 D.C.B. has been diagnosed with schizophrenia (paranoid type). His first psychotic episode was in 2012, and he has been hospitalized numerous times since then. He has a history of violent and aggressive behavior, including "brandishing a firearm and threatening his mother," as well as an incident in January 2014, when he was reportedly "walking through the neighborhood, yelling at no one in particular" while naked and carrying a gun.

¶5      The initial commitment order in this case was filed in June 2016.  A previous commitment order had lapsed, and D.C.B. had refused all medications; he then exhibited "violent" and "threatening" behavior.  The commitment order has been extended several times, with the most recent petition for an extension filed by the County in July 2020, as the previous order for an extension was set to expire on August 30, 2020.[2]

¶6      A hearing on the commitment extension request was held on August 28, 2020.  D.C.B.'s case manager testified that D.C.B. only "reluctantly" cooperates with his treatment services.  He stated that D.C.B. "believes nothing is wrong with him, and that the medications don't work, don't do anything for him." Therefore, the case manager testified that D.C.B. would "absolutely refuse to take medications" if there was no commitment order in place.

¶7      Also testifying at the August 2020 hearing was Dr. Charles Rainey, a forensic psychiatrist appointed by the trial court to evaluate D.C.B.  Dr. Rainey stated that he was unable to speak with D.C.B. prior to the hearing because D.C.B. did not answer his phone; in fact, although Dr. Rainey had evaluated D.C.B. previously in 2015, 2016, and 2017, he stated that he had never had the opportunity to speak with D.C.B., because "the best [Dr. Rainey] would generally get is seeing the drapes or curtains move at [D.C.B.'s] house."  Therefore, the report Dr. Rainey prepared for the court was based on his review of D.C.B.'s records.

---

[2] Under this commitment order, D.C.B. lives in the community with his mother.  He receives his medication as a monthly injection, is required to meet with his case worker on a weekly basis, and sees a psychiatrist every three months—or more often as needed—to "discuss medications and his overall psychiatric stability."

¶8 Dr. Rainey echoed the case manager's testimony that D.C.B.'s insight into his illness is "poor to none[.]" Dr. Rainey explained that D.C.B.'s schizophrenia is being managed by the medication required under the commitment order, as evidenced by the fact that D.C.B. had no recent "significant police contact" and that he had not recently required inpatient treatment. However, Dr. Rainey opined that "[u]ntil [D.C.B.] acknowledges that he has an illness and starts to understand how the medication is helping him, he isn't going to be treatment compliant" without a commitment order in effect. Indeed, Dr. Rainey stated that if D.C.B. "was not required by the [c]ourt to take his medication, that he would cease taking his medication and that the schizophrenia would follow as a natural course and he would again become paranoid and a danger to himself and others."

¶9 In making its findings, the trial court observed that both Dr. Rainey and D.C.B.'s case manager testified that a commitment extension was appropriate "based on that concern of [D.C.B.'s] lack of insight into his mental health conditions and lack of compliance with medications outside of the [c]ourt order." The court further noted that "there was some discussion about the possession of firearms" by D.C.B. during Dr. Rainey's testimony; Dr. Rainey testified that D.C.B. violated the firearm restriction in 2018, although D.C.B. later noted for the record that the incident actually occurred in 2016.

¶10 Ultimately, the trial court found there to be "clear and convincing, satisfactory evidence that the commitment order should be extended" for twelve months from the August 28, 2020 hearing. This appeal follows.

**DISCUSSION**

*Mootness*

¶11    As noted above, the twelve-month recommitment order for D.C.B. was entered on August 28, 2020, and therefore expired on August 28, 2021.  Thus, the County argues that in the event this appeal was not decided by August 28, 2021, it should be deemed moot.  Clearly, we are now beyond that expiration date.[3]  We therefore must address the issue of mootness.

¶12    "An issue is moot when its resolution will have no practical effect on the underlying controversy." ***Portage Cnty. v. J.W.K.***, 2019 WI 54, ¶11, 386 Wis. 2d 672, 927 N.W.2d 509 (citation omitted).  We generally decline to reach moot issues. *See **id.***, ¶12.  In fact, our supreme court has previously determined that an expired initial commitment order is moot due to the "'apparent lack of a live controversy' when an appellant appeals an order to which he or she is no longer subjected." ***Winnebago Cnty. v. Christopher S.***, 2016 WI 1, ¶31, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted).

¶13    Still, we may choose to review a moot issue under "exceptional or compelling circumstances." ***J.W.K.***, 386 Wis. 2d 672, ¶12.  In fact, there are several established exceptions that appellate courts may employ to address moot issues:

---

[3] It is, unfortunately, not uncommon for the appellate process relating to an order issued pursuant to WIS. STAT. ch. 51 to extend beyond the expiration date of that order.  In this case, for example, the Notice of Appeal was not filed until March 26, 2021—nearly seven months after the order was entered; the record from the trial court was received by this court on April 23, 2021; and, after several extension requests, the final brief was not filed until September 16, 2021, nearly three weeks after the expiration of the order.

> (1) the issues are of great public importance; (2) the constitutionality of a statute is involved; (3) the situation arises so often a definitive decision is essential to guide the trial courts; (4) the issue is likely to arise again and should be resolved by the court to avoid uncertainty; or (5) the issue is capable and likely of repetition and yet evades review.

*Id.* (citations and internal quotation marks omitted).

¶14 We conclude that there are compelling circumstances here relating to the exceptions that warrant the review of this matter.[4] First, "[c]ommitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Id.*, ¶16. Ensuring proper due process is generally viewed as an issue of great public importance; in fact, our supreme court has recently directed that "civil commitment cases are to be handled with the utmost diligence and care." *Marathon Cnty. v. D.K.*, 2020 WI 8, ¶26, 390 Wis. 2d 50, 937 N.W.2d 901. Furthermore, even though the supreme court in *D.J.W.* plainly set out its "newly instituted requirement" for specific factual findings with references to a subdivision paragraph of WIS. STAT. § 51.20(1)(a)2., *see D.J.W.*, 391 Wis. 2d 231, ¶45, the trial court here failed to comply with that requirement, and further, neither party discussed the *D.J.W.* requirement or that failure to comply. That indicates to us that review of this issue would be prudent for purposes of improving judicial efficiency, another issue of public importance.

¶15 Moreover, the issue of a recommitment order expiring prior to the completion of the appellate process is extremely likely to arise again due to the

---

[4] In his reply brief, D.C.B. argues that this matter is not moot because it falls under one of the exceptions for reviewing a moot issue, and because there are collateral consequences from the order that continue to affect him. In determining that this matter may be reviewed pursuant to the exceptions, we do not reach D.C.B.'s argument regarding collateral consequences.

time constraints involved in these matters. Thus, it is our hope that our review of this case will focus attention not only on the requirement of ***D.J.W.***, but also on issues relating to timeliness in appeals of WIS. STAT. ch. 51 cases.

*Proof of Dangerousness and the **D.J.W.** Requirement*

¶16    We therefore turn to D.C.B.'s argument that the County's evidence for the commitment extension was insufficient to meet the statutory requirements for proving dangerousness. This review presents a mixed question of law and fact; we will uphold the trial court's findings of fact unless they are clearly erroneous, but whether those facts "satisfy the statutory standard" is a question of law that we review *de novo*. *See **Waukesha Cnty. v. J.W.J.***, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783.

¶17    As background of the statutory scheme of WIS. STAT. ch. 51 cases, under § 51.20(1), commitment proceedings may be commenced upon the filing of a petition by the County, alleging that an individual is (1) mentally ill and is a proper subject for treatment, and (2) "dangerous[.]" *See* § 51.20(1)(a)1.-2.; ***J.W.K.***, 386 Wis. 2d 672, ¶17. The statute sets out five standards as the means for proving dangerousness, each requiring the County to "identify recent acts or omissions demonstrating that the individual is a danger to himself or to others." *See **J.W.K.***, 386 Wis. 2d 672, ¶17; Sec. 51.20(1)(a)2.a.-e. The burden is on the County to prove the allegations by clear and convincing evidence. *See* § 51.20(13)(e); ***J.W.K.***, 386 Wis. 2d 672, ¶17. If the grounds alleged in the petition are proven, the trial court must order commitment. Sec. 51.20(13)(a)3.; ***J.W.K.***, 386 Wis. 2d 672, ¶17.

¶18    The initial time frame for commitment cannot exceed six months. WIS. STAT. § 51.20(13)(g)1; ***J.W.K.***, 386 Wis. 2d 672, ¶17. However, a

commitment order may be extended for periods not to exceed one year. Sec. 51.20(13)(g)1; *J.W.K.*, 386 Wis. 2d 672, ¶18. To obtain an extension, the County must prove the same elements that are required for the initial commitment—that the individual is mentally ill and a proper subject for treatment, and is dangerous.[5] *See J.W.K.*, 386 Wis. 2d 672, ¶18.

¶19     However, WIS. STAT. § 51.20(1)(am) provides an additional means of proving dangerousness "if the individual has been the subject of treatment for mental illness immediately prior to commencement of the extension proceedings[.]" *J.W.K.*, 386 Wis. 2d 672, ¶19. Specifically, § 51.20(1)(am) permits dangerousness to be proven by showing "a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." *See id.* Put another way, § 51.20(1)(am) "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." *J.W.K.*, 386 Wis. 2d 672, ¶19. As such, § 51.20(1)(am) "functions as an alternative evidentiary path, reflecting a change in circumstances occasioned by an individual's commitment and treatment." *J.W.K.*, 386 Wis. 2d 672, ¶19.

¶20     However, WIS. STAT. § 51.20(1)(am) "does not change the elements or quantum of proof required" to prove dangerousness for a commitment extension. *D.J.W.*, 391 Wis. 2d 231, ¶34 (citation omitted). In other words, even

---

[5] D.C.B. concedes that the first element—that he is mentally ill and a proper subject for treatment—has been established. Thus, the sole issue on appeal is whether the County demonstrated the dangerousness element.

when applying the recommitment standard set forth in § 51.20(1)(am), the trial court is still required to ground its decision regarding dangerousness in one or more of the standards enumerated in § 51.20(1)(a)2.a.-e. In that vein, the requirement set forth in *D.J.W.* for specific references to be made to the subdivision paragraphs of § 51.20(1)(a)2. was designed to eliminate the "guesswork" in a review of a challenge to the sufficiency of the evidence that forms the basis of a dangerousness determination on recommitment. *See D.J.W.*, 391 Wis. 2d 231, ¶¶44-45.

¶21 As noted above, *D.J.W.* was decided prior to the recommitment hearing in this case. Indeed, the requirement of *D.J.W.* that "*going forward* [trial] courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of [§ ]51.20(1)(a)2. on which the recommitment is based" is plain and unequivocal. *See D.J.W.*, 391 Wis. 2d 231, ¶3 (emphasis added). We discern no reason why this requirement should not apply to this case.

¶22 Just as obvious, based on our review of the record in this case, is that the trial court here did not comply with that requirement. Generally, this conclusion would result in the remand of the matter to the trial court for further fact finding in order to comply with the *D.J.W.* requirement. *See Lange v. LIRC*, 215 Wis. 2d 561, 572, 573 N.W.2d 856 (Ct. App. 1997) (stating that the court of appeals "does not engage in fact[]finding").

¶23 However, the "failure to comply with a statutory mandate pertaining to the exercise of subject matter jurisdiction may result in a loss of the [trial] court's competency to adjudicate the particular case before the court." *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶9, 273 Wis. 2d 76, 681 N.W.2d 190. Put

another way, the competency of the court "addresses its ability to undertake a consideration of the specific case or issue before it," and this authority is conferred by the legislature. *State v. Minniecheske*, 223 Wis. 2d 493, 497-98, 590 N.W.2d 17 (Ct. App. 1998).

¶24 The statutory requirements for commitment extensions, as mandated by the legislature, include limiting recommitment terms to not more than one year, and requiring proof of the same elements necessary for the initial commitment—that the individual is mentally ill and a proper subject for treatment, and is dangerous. *See* WIS. STAT. § 51.20(13)(g)1.; *J.W.K.*, 386 Wis. 2d 672, ¶18. Here, the trial court's failure to comply with *D.J.W.* means that the element of dangerousness was not sufficiently established.[6] Furthermore, the time frame of that order provided an expiration date of August 28, 2021—twelve months from its date of entry on August 28, 2020. Therefore, the trial court no longer has competency to hear proceedings on this matter.

¶25 As a result, there is no option for amending the order with the remand of this matter to the trial court. Accordingly, we reverse outright the August 28, 2020 order of the trial court extending D.C.B.'s commitment.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[6] Because we are reversing the August 28, 2020 order outright based on these grounds, we need not reach D.C.B.'s argument that the County failed to meet its burden of proving dangerousness. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").